**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEHAN ZIBOUKH, MARGRET PHILIE, VERA FIGLOCK, NICOLE MAY, TYANA DAUGHTERY, SOLALIZ HERNANDEZ, and DEBRA KRYSTYN, on behalf of themselves and all others similarly situated, | ) | Case No. 23-cv-15653 |
| Plaintiffs, | ) | District Judge Thomas M. Durkin |
| v. | ) | Magistrate Judge Maria Valdez |
| WHALECO INC. d/b/a TEMU, and PDD HOLDINGS INC., | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION**

Date: February 9, 2024

Mark Mester (IL Bar No. 6196140)
Gary Feinerman (IL Bar No. 6206906)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
Email: mark.mester@lw.com
gary.feinerman@lw.com

Serrin Turner (*pro hac vice*)
Matthew Valenti (*pro hac vice*)
Hadrian Luo (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: serrin.turner@lw.com
matthew.valenti@lw.com
hadrian.luo@lw.com

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ........................................ 1

FACTUAL BACKGROUND ........................................ 2

A. Defendants Temu and PDD Holdings........................................ 2

B. All Temu Users Must Consent to Temu's Terms of Use........................................ 3

C. The Terms Generally Require That Disputes Be Arbitrated ........................................ 4

D. Plaintiffs Each Agreed to the Terms in Registering an Account ........................................ 5

E. Plaintiffs Ignored Their Agreements and Filed This Complaint ........................................ 5

LEGAL STANDARD........................................ 6

ARGUMENT ........................................ 7

A. Each Plaintiff Validly Agreed to the Terms ........................................ 7

B. The Arbitration Agreement and Class Action Waiver Are Enforceable ............... 11

C. The Arbitration Provision And Class Waiver Extend To Claims Against PDD Holdings........................................ 13

CONCLUSION........................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acaley v. Vimeo*,
464 F. Supp. 3d 959 (N.D. Ill. 2020) ....................7, 9

*Anand v. Heath*,
2019 WL 2716213 (N.D. Ill. 2019) ....................7

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................6, 13

*Bahoor v. Varonis Sys*.,
152 F. Supp. 3d 1091 (N.D. Ill. 2015) ....................11

*Berkson v. Gogo*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015) ....................7

*Brown v. Luxottica Retail*,
2010 WL 3893820 (N.D. Ill. 2010) ....................13

*Coons v. Yum!*,
2023 WL 3320149 (S.D. Ill. 2023)....................14

*Edmundson v. Amazon.com*,
2020 WL 5819870 (N.D. Ill. 2020) ....................6, 13

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023) ....................7, 10

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018)....................1

*Feld v. Postmates*,
442 F. Supp. 3d 825 (S.D.N.Y. 2020)....................7, 9, 11

*Fteja v. Facebook*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012)....................8

*Gore v. Alltel Commc'ns*,
666 F.3d 1027 (7th Cir. 2012) ....................7, 12

*Henry Schein v. Archer & White*,
139 S. Ct. 524 (2019)....................12

*Hoffman v. Deloitte*,
143 F. Supp. 2d 995 (N.D. Ill. 2001) ....................15

*Holden v. Deloitte*,
390 F. Supp. 2d 752 (N.D. Ill. 2005) ....................13, 15

*In re Titanium Dioxide Antitrust Litig.*,
962 F. Supp. 2d 840 (D. Md. 2013) ....................15

*Jain v. de Mere*,
51 F.3d 686 (7th Cir. 1995) ....................6

*Johnson v. Uber*,
2018 WL 4503938 (N.D. Ill. 2018) ....................8, 9

*Kaufman v. U-Haul*,
2018 WL 4094959 (E.D. Pa. 2018) ....................15

*Kemph v. Reddam*,
2015 WL 1510797 (N.D. Ill. 2015) ....................13

*Lee v. Ticketmaster*,
817 F. App'x 393 (9th Cir. 2020) ....................9

*Meyer v. Uber*,
868 F.3d 66 (2d Cir. 2017)....................7, 8, 10

*Miracle-Pond v. Shutterfly, Inc.*,
2020 WL 2513099 (N.D. Ill. 2020) ....................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr.*,
460 U.S. 1 (1983)....................6, 12

*Nayal v. HIP Network*,
620 F. Supp. 2d 566 (S.D.N.Y. 2009)....................13

*New Prime v. Oliveira*,
139 S. Ct. 532 (2019)....................12

*O'Shea v. Maplebear*,
508 F. Supp. 3d 279 (N.D. Ill. 2020) ....................6

*Paragon Micro, Inc. v. Bundy*,
22 F. Supp. 3d 880 (N.D. Ill. 2014) ....................14

*Paramedics Electromedicina v. GE Med. Sys.*,
369 F.3d 645 (2d Cir. 2004)....................12

*Ragone v. Atl. Video*,
595 F.3d 115 (2d Cir. 2010)........15

*Saizhang Guan v. Uber Techs., Inc.*,
236 F. Supp. 3d 711 (E.D.N.Y. 2017) ........8

*Scheurer v. Fromm*,
863 F.3d 748 (7th Cir. 2017) ........12

*Selden v. Airbnb*,
4 F.4th 148 (D.C. Cir. 2021)........8, 11

*Sgouros v. TransUnion*,
817 F.3d 1029 (7th Cir. 2016) ........7

*Sinavsky v. NBC*,
2021 WL 4151013 (S.D.N.Y. 2021)........13

*Sosa v. Onfido*,
8 F.4th 631 (7th Cir. 2021) ........13

*Starke v. Gilt Groupe*,
2014 WL 1652225 (S.D.N.Y. 2014)........9

*Sweet Dreams Unlimited v. Dial–A–Mattress Int'l*,
1 F.3d 639 (7th Cir. 1993) ........11

*Tchrs. Ins. & Annuity Ass'n of Am. v. Adair*,
2023 WL 2557390 (S.D.N.Y. Mar. 17, 2023) ........14

*Thomson-CSF, S.A. v. Am. Arb. Ass'n*,
64 F.3d 773 (2d Cir. 1995)........13

*Thorne v. Square*,
2022 WL 542383 (E.D.N.Y. 2022)........7, 9

*Tinder v. Pinkerton Sec.*,
305 F.3d 728 (7th Cir. 2002) ........6

*TopstepTrader v. OneUp Trader*,
2018 WL 1859040 (N.D. Ill. 2018) ........8

*Vranjkovic v. Eldorado Trading*,
2014 WL 6685960 (N.D. Ill. 2014) ........11

*Wallace v. Grubhub*,
970 F.3d 798 (7th Cir. 2020) ........6

*Wilcosky v. Amazon.com*,
517 F. Supp. 3d 751 (N.D. Ill. 2021) ....................9

*Zurich Am. Ins. v. Watts Indus.*,
417 F.3d 682 (7th Cir. 2005) ....................6, 11

**STATUTES**

9 U.S.C. § 1 *et seq*....................1

Defendants Whaleco Inc. d/b/a Temu ("Temu") and PDD Holdings Inc. ("PDD Holdings") respectfully submit this memorandum in support of their motion to compel arbitration.[1]

## PRELIMINARY STATEMENT

Plaintiffs' claims belong in arbitration, not in court. When Plaintiffs signed up for Temu, they agreed to individually arbitrate any dispute relating to their use of Temu's service. That agreement is valid, and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., requires "courts [to] rigorously [] enforce arbitration agreements according to their terms." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018). Accordingly, this Court should compel arbitration of Plaintiffs' claims.

Each Plaintiff created a Temu account and, in doing so, agreed to Temu's Terms of Use ("Terms"). At the time of account creation, Plaintiffs were presented with a registration prompt informing them that, by continuing, they would be agreeing to the Terms. The prompt hyperlinked to the Terms, allowing Plaintiffs to review the Terms if they wished. The prompt was in a format that multiple federal appeals courts have repeatedly held sufficient to form a valid agreement. Plaintiffs cannot dispute they were presented with the prompt and chose to continue past it, and thus they are bound by the Terms.

The Terms mandate that Plaintiffs' claims proceed on an individual basis in arbitration. First, the Terms contain a broad arbitration provision requiring arbitration of "any dispute … arising out of or relating in any way to" their use of Temu. Ex. B § 19.1. That provision readily encompasses Plaintiffs' claims—all of which relate to Temu's alleged collection of their personal data through their use of Temu. Even if there were any doubt about the arbitration provision's

---

[1] Unless otherwise indicated, all internal citations and quotations are omitted, and all emphasis is added. Citations to "Ex. _" refer to the exhibits attached to the declaration of Michael Trinh, and citations to "App." refer to the appendix appended to the end of this brief.

scope, the Terms delegate resolution of arbitrability issues to the arbitrator. Courts routinely compel arbitration in these circumstances.

Second, the Terms contain a class action waiver that bars Plaintiffs from pursuing this lawsuit on a class basis. *Id.* § 19.4. Each Plaintiff agreed that any dispute they bring against Temu must be resolved on an individual basis. Plaintiffs ignored this requirement when they filed this suit on behalf of a putative class of all Temu users. Class action waivers like the one here are regularly enforced and require that arbitration be compelled on an individual basis.

Finally, Plaintiffs cannot skirt the arbitration requirement by naming Temu's parent—PDD Holdings—as a defendant. Although PDD Holdings is not a named party to the Terms, settled law holds that a non-signatory may enforce an arbitration agreement where the plaintiff alleges that it has an agency relationship, or engaged in concerted misconduct, with the signatory. That is precisely what Plaintiffs allege here: they base their claims against PDD Holdings on the (incorrect) premise that it has an agency and "alter ego" relationship with Temu.

Accordingly, the Court should compel arbitration of all claims against both Defendants.

## FACTUAL BACKGROUND

### A. Defendants Temu and PDD Holdings

Temu is an e-commerce company that connects consumers with sellers, manufacturers, and brands around the world. Compl. (ECF No. 1) ¶¶ 1, 22, 43-44. Temu makes its services available to consumers through its website (https://temu.com) and mobile apps on Android and Apple iOS devices. *Id*. The Temu app is "extremely popular" and had "more than 100 million users in the United States by May 2023." *Id*. ¶ 3. PDD Holdings is Temu's parent company. *Id*. ¶¶ 11, 21. It is incorporated in the Cayman Islands and has its principal executive office in Ireland. *Id*. ¶ 21. PDD Holdings is a holding company for its subsidiary businesses, including Temu, and does not itself conduct any substantial business.

### B. All Temu Users Must Consent to Temu's Terms of Use

To participate in Temu's services, users must register an account through Temu's app or website. *See* Trinh Decl. ¶¶ 4-6. As part of the registration process, each user is shown a prompt (the "Registration Prompt") with: (i) a field to enter the email or phone number they will use to register, and a corresponding "Continue" button, and (ii) buttons allowing the user to instead "Continue" by registering via their existing Google, Facebook, Apple, or Twitter/X account. *See id.* Immediately below these options is a notice stating: "By continuing, you agree to our **Terms of Use** and **Privacy & Cookie Policy**." *Id.* The bolded words "Terms of Use" and "Privacy & Cookie Policy" hyperlink to the respective agreements. *See id.* ¶¶ 5-6. As shown below, the entire Registration Prompt is displayed clearly on one screen—so the user need not scroll down to see any part of it, including the link to the Terms. *Id.* ¶ 5; Ex. A.




After a user registers an account, if they ever log out, they must agree to the Terms again each time they input their credentials to log back into their account—at which point they again are

shown the Registration Prompt. *See id.* ¶ 7.

### C. The Terms Generally Require That Disputes Be Arbitrated

The Terms make clear that disputes arising from the user's use of Temu's services are broadly subject to arbitration. The Terms conspicuously call attention to the arbitration agreement, noting at the beginning of the document in all caps and bold font that "**SECTION 19 CONTAINS, AMONG OTHER THINGS, AN AGREEMENT TO ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS, THAT ALL DISPUTES BETWEEN YOU AND [TEMU] BE RESOLVED BY BINDING AND FINAL ARBITRATION.**" Ex. B § 1.5 (emphasis in original). Section 19, titled "Arbitration Agreement," in turn provides that "any dispute, claim, or disagreement arising out of or relating in any way to your access to or use of the Services … will be resolved by binding arbitration … rather than in court." *Id.* § 19.1. The limited exceptions to this provision (for claims brought in small claims court and claims for intellectual property infringement) are not applicable here. *Id.* Section 19 also contains a class action waiver, generally providing that claims may be brought "**ONLY ON AN INDIVIDUAL BASIS AND NOT ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS**." *Id.* § 19.4 (emphasis in original).

The Arbitration Agreement contains a delegation clause broadly requiring that disputes regarding the arbitration provision be decided by an arbitrator in the first instance. Again with limited exceptions not applicable here, the delegation clause provides that "[t]he arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement … ." *Id.* § 19.7.

### D. Plaintiffs Each Agreed to the Terms in Registering an Account

Each Plaintiff registered an account on Temu. Trinh Decl. ¶¶ 11-29. Some did so by inputting their email address or phone number, and others by using their Facebook, Google, or Apple accounts. *Id.* Regardless of the method used, each was presented with the Registration Prompt, notifying them that, by continuing, they would be consenting to the Terms. *Id*. In addition, four of the seven Plaintiffs—Ziboukh, Krystyn, Philie, and Daugherty—logged out and back into their Temu accounts one or more times after initially registering, and as a result, were shown, and chose to continue past, the Registration Prompt on multiple occasions. *Id*. ¶¶ 7, 14, 17, 24, 29.

### E. Plaintiffs Ignored Their Agreements and Filed This Complaint

Even though Plaintiffs agreed they would arbitrate any disputes with Temu and would not bring claims on a classwide basis, Plaintiffs filed this putative class action complaint against Temu and PDD Holdings on November 3, 2023, asserting various data privacy causes of action.

The Complaint is premised on baseless conjecture—lifted extensively from a report published by a known short-seller with an interest in driving down stock prices—that Temu's app improperly collects personal data from users' mobile devices. Compl. ¶¶ 56-79. The Complaint is long on rhetoric but short on well-pleaded facts. For example, Plaintiffs make conclusory allegations that the Temu app "has hidden functions that allow for extensive data exfiltration" from users' mobile devices and that it "contains malware, spyware, and other means to 'plunder' user data." *Id*. ¶¶ 57-58; *see also id*. ¶ 100 ("Defendants have designed the Temu app to surreptitiously collect a wide range of data from Temu users … ."), ¶¶ 122-28. Even though the Complaint fails to specify any concrete harm they suffered as a result of using the Temu app, Plaintiffs assert twelve causes of action. They purport to bring these claims on behalf of a putative nationwide class of Temu app users and three statewide subclasses. *Id*. ¶¶ 129, 144-281.

**LEGAL STANDARD**

The FAA "governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts." *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995). "[T]he FAA was designed to promote arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011), and it "sweeps broadly, requiring courts rigorously to enforce arbitration agreements according to their terms." *Wallace v. Grubhub*, 970 F.3d 798, 800 (7th Cir. 2020).

Under the FAA, an arbitration agreement is enforceable if there is "[1] a written agreement to arbitrate, [2] a dispute within the scope of the arbitration agreement, and [3] a refusal to arbitrate." *Zurich Am. Ins. v. Watts Indus.*, 417 F.3d 682, 687 (7th Cir. 2005). "In interpreting the breadth and viability of an arbitration provision, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *O'Shea v. Maplebear*, 508 F. Supp. 3d 279, 284 (N.D. Ill. 2020). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*, 460 U.S. 1, 24-25 (1983).

"Motions to compel arbitration are reviewed under a summary judgment standard." *Edmundson v. Amazon.com*, 2020 WL 5819870, *1 (N.D. Ill. 2020). If the moving party shows there is a written agreement to arbitrate, the opposing party "must identify a triable issue of fact" as to whether the parties validly entered into the agreement. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The non-movant cannot meet this burden simply by "denying the facts upon which the right to arbitration rests," and instead "must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.*

## ARGUMENT

### A. Each Plaintiff Validly Agreed to the Terms

Plaintiffs had sufficient notice of the Terms, and manifested their assent to be bound by them, when they created their Temu accounts. Courts have repeatedly addressed and upheld terms-of-use agreements in comparable cases.[2]

Determining whether an online terms-of-use agreement was formed boils down to whether a user "had reasonable notice of the terms of use" and "manifested assent" thereto. *Thorne v. Square*, 2022 WL 542383, *7 (E.D.N.Y. 2022); *see also Acaley v. Vimeo*, 464 F. Supp. 3d 959, 965 (N.D. Ill. 2020) ("Illinois contract law requires that a website provide a user reasonable notice that his use of the site or click on a button constitutes assent to an agreement."). This standard is applied through the lens of a "reasonably prudent smartphone user." *Meyer v. Uber*, 868 F.3d 66, 77 (2d Cir. 2017). That is, the standard presumes the plaintiff has some reasonable level of familiarity with using and navigating a smartphone app and signing up for services through it. *See Feld v. Postmates*, 442 F. Supp. 3d 825, 830 (S.D.N.Y. 2020) ("The Court … does not presume that the user has never before encountered an app or entered into a contract using a smartphone.").

---

[2] "To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation." *Gore v. Alltel Commc'ns*, 666 F.3d 1027, 1032 (7th Cir. 2012). Although the Terms are governed by New York law (Ex. B § 18.3), the Court may consult cases applying the law of Illinois and other jurisdictions (including California), as "the substantive contractual laws of New York, California, and Illinois … are substantively similar with respect to the issue of contract formation." *Berkson v. Gogo*, 97 F. Supp. 3d 359, 388 (E.D.N.Y. 2015); *see also Anand v. Heath*, 2019 WL 2716213, *2 (N.D. Ill. 2019) ("The Court [] discerns no meaningful differences in contract formation principles among the jurisdictions to which the parties have cited [which included New York]."); *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 702–03 (2d Cir. 2023) ("[T]raditional contract formation law does not vary meaningfully from state to state, … and therefore, our precedents determining the enforceability of arbitration provisions according to the contract-law principles of other states may also be relevant to this dispute."). This comports with the Seventh Circuit's approach in similar cases. *E.g.*, *Sgouros v. TransUnion*, 817 F.3d 1029, 1034 (7th Cir. 2016) (analyzing whether web-based terms of use formed valid contract and citing cases applying laws of California, Florida, Oklahoma, and other states).

Temu's Terms are presented in a common format, known as a "sign-in wrap" agreement, in which the user is given a hyperlink to the terms of use at the time of account registration and is expressly informed that, by creating an account, they are agreeing to the terms. *See Selden v. Airbnb*, 4 F.4th 148, 156 (D.C. Cir. 2021) (explaining that "sign-in wrap" consists of a user interface "designed so that a user is notified of the existence and applicability of the site's 'terms of use' when proceeding through the website's sign-in or login process"). Courts consistently uphold sign-in wrap agreements. *See TopstepTrader v. OneUp Trader*, 2018 WL 1859040, *4 (N.D. Ill. 2018) ("Courts applying Illinois law have upheld sign-in-wrap agreements … ."); *Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 723–24 (E.D.N.Y. 2017) ("[C]ourts in this Circuit have upheld 'Sign–In Wrap' agreements where plaintiffs did not even click an 'I Accept' button, but instead clicked a 'Sign Up' or 'Sign In' button where nearby language informed them that clicking the buttons would constitute accepting the terms of service."); *Fteja v. Facebook*, 841 F. Supp. 2d 829, 839-41 (S.D.N.Y. 2012) (collecting cases).

Courts determine the validity of sign-in wrap agreements by "look[ing] to the layout and language of the site to decide whether it would provide a reasonably prudent smartphone user with reasonable notice that a click—i.e., signing up—will manifest assent to an agreement." *Airbnb*, 4 F.4th at 156; *see also Uber*, 868 F.3d at 75 (same); *Miracle-Pond v. Shutterfly, Inc.*, 2020 WL 2513099, *4 (N.D. Ill. 2020) (applying objective test to whether a user has adequate notice). A user has sufficient notice of the terms when they are presented conspicuously and placed near the "register" or "continue" button—for example, where they appear on the same screen, so that the user need not scroll down to find it. *See, e.g.*, *Johnson v. Uber*, 2018 WL 4503938, *4 (N.D. Ill. 2018) (finding valid agreement where "the app that Johnson used to create his Uber account [stated]: 'By creating an Uber account, you agree to the Terms of Service & Privacy Policy,'"

which "appeared in an easy-to-read font on an uncluttered screen, and no scrolling was required to view it"); *Postmates*, 442 F. Supp. 3d at 831 (same).

The Registration Prompt shown during Temu's registration process easily satisfies this standard. It presented the Terms to Plaintiffs through a hyperlink appearing in bold font, in an uncluttered format, that was immediately visible on a single screen. *See* Trinh Decl. ¶¶ 5-6; Ex. A. Courts regularly hold that this format provides reasonable notice of a company's terms of use, and therefore that users manifest their assent when they choose to continue. *See, e.g.*, *Vimeo*, 464 F. Supp. 3d at 966 (applying Illinois law and finding valid agreement where screen indicated that plaintiff could "'Create account' and, directly below that, in smaller but still conspicuous font, displayed a statement that read: 'By starting you agree to our terms and privacy policy,' with hyperlinks to the respective documents"); *Wilcosky v. Amazon.com*, 517 F. Supp. 3d 751, 764 (N.D. Ill. 2021) (finding valid agreement where "Amazon.com's [] check-out page contains a notice that states, 'By placing your order, you agree to Amazon.com's privacy notice and conditions of use'"); *Starke v. Gilt Groupe*, 2014 WL 1652225, *3 (S.D.N.Y. 2014) (finding valid agreement because "[w]hen Starke clicked 'Shop Now,' he was informed that by doing so, and giving his email address, 'you agree to the Terms of Membership for all Gilt Groupe sites'"); *Square*, 2022 WL 542383, *8 (finding valid agreement where "a reasonably prudent smartphone user would understand that the terms were connected to the creation of a user account"); *Lee v. Ticketmaster*, 817 F. App'x 393, 394 (9th Cir. 2020) ("Lee validly assented to Ticketmaster's Terms of Use, including the arbitration provision, [because] each time he clicked the 'Sign In' button … three lines below the button, the website displayed the phrase, 'By continuing past this page, you agree to our Terms of Use' …").

The Second Circuit's decision in *Meyer v. Uber Technologies* ("*Uber*"), *supra*, is instructive, as courts in this District have noted. *Johnson*, 2018 WL 4503938, *5 ("The Court finds

the reasoning in [*Uber*] persuasive."). *Uber* held that a registration screen substantially similar to Temu's provided reasonable notice of Uber's terms of use. *Compare* Ex. A, *with* App. at 1 (applicable registration screen reproduced from the *Uber* court's opinion). The court explained that the Uber registration screen—just like Temu's—was "uncluttered, with only fields for the user to enter his or her [registration] details, buttons to register for a user account or to connect the user's pre-existing PayPal account or Google Wallet," and a notice stating that "[b]y creating an Uber account, you agree to [Uber's terms of use]," which "appears directly below the buttons for registration." *Uber*, 868 F.3d 66 at 78; *compare* Ex. A. Further, like Temu's Registration Prompt, "[t]he entire screen [in the Uber application] is visible at once, and the user does not need to scroll beyond what is immediately visible to find notice of the Terms of Service." *Uber*, 868 F.3d 66 at 78. Accordingly, "a reasonably prudent smartphone user would understand that the terms were connected to the creation of a user account." *Id.* Temu's Registration Prompt is substantially the same—if anything, it is less cluttered—so the reasoning in *Uber* fully applies here.

The Second Circuit recently reached a similar holding in *Edmundson v. Klarna*, again finding that a registration screen substantially similar to Temu's provided reasonable notice to users. *See* 85 F.4th 695, 705–07 (2d Cir. 2023); *see* App. at 2 (applicable Klarna screen reproduced from the *Klarna* court's opinion). As in *Uber*, the court emphasized that the defendant's registration "interface is 'uncluttered,'" as the "content is visible at once, and the user does not need to scroll beyond what is immediately visible to find notice" of the terms. *Id.* The court rejected the plaintiff's arguments about the font size and color of the terms hyperlink, explaining that "[a]lthough [they] are in a smaller font relative to other text … , they are set apart from surrounding information by being underlined and in a color that stands in sharp contrast to the color of the interfaces[] [*i.e.*, dark text on white background]." *Id.* at 706 ("because the interface does not include a plethora of clutter or extraneous information, the notice to Klarna's terms – even if in a

smaller font – appears sufficiently conspicuous"); *see also Postmates*, 442 F. Supp. 3d at 831 (upholding sign-in wrap agreement where "the grey and black color [of the hyperlink] contrast against the white background and are clear to the reasonably prudent user creating an account").[3]

There is no material basis on which to distinguish Temu's registration screen from those upheld in *Uber*, *Klarna*, and the other cases cited above. Consistent with those authorities, Temu's sign-in wrap agreement is valid, and all users who chose to register a Temu account—including Plaintiffs—manifested their assent to be bound by the Terms.

### B. The Arbitration Agreement and Class Action Waiver Are Enforceable

Having formed a valid agreement with Temu, Plaintiffs are bound by its provisions. Settled case law makes clear that the arbitration provision and class action waiver in the Terms apply here and require arbitration of Plaintiffs' claims on an individual basis.

Courts enforce valid arbitration agreements so long as the dispute at issue comes within its scope. *Zurich*, 417 F.3d at 687. The arbitration provision in the Terms is broad, covering "any dispute … arising out of or relating to" Plaintiffs' use of Temu. Ex. B § 19.1. "The Seventh Circuit has held that an arbitration clause stating that it applies to all disputes 'arising out of' the Agreement … reaches all disputes having their origin or genesis in the contract." *Vranjkovic v. Eldorado Trading*, 2014 WL 6685960, *1 (N.D. Ill. 2014) (citing *Sweet Dreams Unlimited v. Dial–A–Mattress Int'l*, 1 F.3d 639, 642 (7th Cir. 1993)); *see also Bahoor v. Varonis Sys.*, 152 F.

---

[3] *Selden v. Airbnb* is another recent example of a federal appeals court upholding a similar sign-in wrap agreement. There, the court held Airbnb's registration screen sufficient where: (i) "[t]he three buttons [for Facebook, Google, and email registration] plainly provided options for how a user could sign up for Airbnb"; (ii) "[d]irectly below these three options, Airbnb informed the user that 'By signing up, I agree to Airbnb's Terms of Service'"; and (iii) "[t]he buttons appeared in close proximity to the notice and on a single screen." 4 F.4th at 157. In these circumstances, the D.C. Circuit held, "[a] reasonable person would know that, by signing up, he would be agreeing to Airbnb's terms." *Id.*; *see* App. at 3 (applicable Airbnb registration screen reproduced from the *Airbnb* court's opinion).

Supp. 3d 1091, 1099 (N.D. Ill. 2015) (applying same principle under New York law).

Plaintiffs' allegations unquestionably arise from and relate to their use of Temu's services, and therefore must be arbitrated. Indeed, Plaintiffs' proposed class definition consists of everyone "who used the Temu platform," and Plaintiffs allege they were harmed because "Defendants [] designed the Temu app to surreptitiously collect a wide range of data from Temu users." Compl. ¶ 100; *see also id.* ¶¶ 57-58, 122-28. Plaintiffs' claims plainly fall within the arbitration provision's scope. *See, e.g.*, *Paramedics Electromedicina v. GE Med. Sys.*, 369 F.3d 645, 654 (2d Cir. 2004) (holding that "arising out of" language means that if the "allegations underlying the claims 'touch matters' covered by the parties' … agreements, then those claims must be arbitrated"); *Gore*, 666 F.3d at 1036 (applying "broad reading of 'arising out of and relating to,'" and finding claims "fall within the scope of the arbitration clause"). This is consistent with the FAA's mandate that, "once an enforceable arbitration contract is shown to exist, questions as to the scope of arbitrable issues should be resolved in favor of arbitration." *Scheurer v. Fromm*, 863 F.3d 748, 752 (7th Cir. 2017); *see also Moses H. Cone*, 460 U.S. at 24–25 (same).

Even if there were any doubt that Plaintiffs' claims fall within the arbitration provision's scope, those questions must be resolved in arbitration. The Terms broadly provide that the arbitrator shall have "exclusive authority" to determine the arbitration provision's enforceability and scope. Ex. B § 19.7. In these circumstances, courts require that disputes about the scope or application of the agreement be delegated to the arbitrator. *See New Prime v. Oliveira*, 139 S. Ct. 532, 538 (2019) ("A delegation clause gives an arbitrator authority to decide even the initial question whether the parties' dispute is subject to arbitration."); *Henry Schein v. Archer & White*, 139 S. Ct. 524, 530 (2019) ("[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."). Accordingly, to the extent Plaintiffs challenge the application of the arbitration provision to their claims, the Court

should delegate that dispute to an arbitrator. *See Kemph v. Reddam*, 2015 WL 1510797, *4 (N.D. Ill. 2015) (enforcing clause delegating to arbitrator disputes "concerning the validity, enforceability, or scope" of the arbitration agreement, and finding that "[c]ourts in this district and elsewhere have found that similar language clearly evidences the parties' agreement to delegate gateway issues to [] arbitrator"); *Sinavsky v. NBC*, 2021 WL 4151013, *5 (S.D.N.Y. 2021) (same).

Finally, separate and apart from the arbitration agreement, Plaintiffs waived their rights to bring claims against Temu on a classwide basis. Class action waivers like the one in the Terms are enforceable under the FAA and New York law. *See, e.g.*, *Concepcion*, 563 U.S. at 352 (holding such waivers enforceable under the FAA); *Brown v. Luxottica Retail*, 2010 WL 3893820, *2 (N.D. Ill. 2010) (same); *Nayal v. HIP Network*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) ("Courts applying New York law … have uniformly held that class action waivers are not unconscionable."). Plaintiffs thus cannot bring any classwide claims in this Court—or in arbitration. *Amazon*, 2020 WL 5819870, *2-3 (enforcing class action waiver in arbitration clause).

### C. The Arbitration Provision and Class Waiver Extend To Claims Against PDD Holdings

Although PDD Holdings is not a named party to the Terms, PDD Holdings is entitled to enforce the arbitration agreement and class waiver here. "Federal courts repeatedly have recognized that agency law and related principles can permit the enforcement of arbitration agreements by nonsignatories." *Holden v. Deloitte*, 390 F. Supp. 2d 752, 768 (N.D. Ill. 2005). A "nonparty's right to enforce an arbitration agreement is governed by state law." *Sosa v. Onfido*, 8 F.4th 631, 637 (7th Cir. 2021); *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) (same). Under New York law, a non-signatory can enforce an arbitration agreement in five scenarios: "(i) incorporation by reference; (ii) assumption; (iii) agency; (iv) veil-piercing/alter ego; and (v) estoppel." *Tchrs. Ins. & Annuity Ass'n of Am. v. Adair*, 2023 WL 2557390, *7 (S.D.N.Y.

Mar. 17, 2023). Illinois law is largely in accord. *See Coons v. Yum!*, 2023 WL 3320149, *7 (S.D. Ill. 2023) (a non-signatory may enforce an agreement via "third-party beneficiary, agency, and equitable estoppel" theories). Two of those scenarios—agency and equitable estoppel—apply here and require arbitration of Plaintiffs' claims against PDD Holdings on an individual basis.

First, Plaintiffs expressly allege that PDD Holdings and Temu have an agency relationship. Compl. ¶ 27 ("At all relevant times, and in connection with the matters alleged herein, each Defendant acted as an agent, servant, partner, joint venturer, and/or alter ego of the other."); *see also id.* ¶¶ 23-28.[4] That allegation alone suffices for PDD Holdings to enforce the Terms as against Plaintiffs. The *Coons* court addressed this same issue—*i.e.*, where the plaintiff "allege[d] the defendants have an agency relationship with [the signatory to the arbitration and class waiver agreement], going so far as alleging alter ego and joint employer scenarios." 2023 WL 3320149, *7. The court held that the non-signatory defendant could enforce the arbitration agreement on that basis, reasoning that "Defendants, due to the accusations of knowledge and control over [the signatory], have the right to enforce the arbitration agreement because of their alleged agency relationship." *Id.* at *8. As the Complaint expressly alleges that Temu and PDD Holdings are agents of each other, PDD Holdings has the right to enforce the Terms and compel Plaintiffs to arbitrate their claims on an individual basis. *See Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 890 (N.D. Ill. 2014) (permitting non-signatory to enforce arbitration agreement because plaintiff alleged the non-signatory acted in concert with a signatory).

---

[4] To be clear, Defendants dispute Plaintiffs' characterization of the relationship between Temu and PDD Holdings and deny PDD Holdings' involvement in any conduct alleged in the Complaint, and PDD Holdings intends to move to dismiss the claims against it if the motion to compel arbitration is denied. However, that is irrelevant to whether PDD Holdings can enforce the arbitration agreement and class waiver, which is an inquiry that turns on the face of Plaintiffs' allegations. *Coons v. Yum! Brands*, 2023 WL 3320149, *7 (S.D. Ill. 2023) ("The Seventh Circuit has compelled arbitration where the plaintiff alleges a non-signatory has some sort of agency relationship, *regardless of whether the allegations are true or disputed*.").

Second, for related reasons, Plaintiffs are equitably estopped from seeking to avoid the arbitration agreement and class waiver as they relate to PDD Holdings. Equitable estoppel applies "when the signatory [to the arbitration agreement] raises allegations of … substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Hoffman v. Deloitte*, 143 F. Supp. 2d 995, 1004–05 (N.D. Ill. 2001). That is precisely what Plaintiffs allege here—*i.e.*, that Temu and PDD Holdings "constituted a single enterprise with a unity of interest." Compl. ¶ 28; *see also id.* ¶ 24 (alleging that PDD Holdings "directed the operations of [] Temu"). Non-signatories may compel arbitration based on such allegations. *See, e.g.*, *Holden*, 390 F. Supp. 2d at 768 (estopping plaintiff from objecting to arbitration where the "complaint was replete with allegations of concerted misconduct by [non-signatory] Deloitte and the signatory EPS, as well as with allegations that Deloitte was acting on behalf of EPS"); *Ragone v. Atl. Video*, 595 F.3d 115 (2d Cir. 2010) (estopping plaintiff from objecting to arbitration with both signatory employer and non-signatory joint employer); *Kaufman v. U-Haul*, 2018 WL 4094959, *12 (E.D. Pa. 2018) (holding that "a plaintiff who treats the non-signatory and signatory party as jointly liable for the same alleged conduct is estopped from resisting arbitration with the nonsignatory"); *see also In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 852 (D. Md. 2013) ("For the same equitable reasons, … class action waivers can be enforced by the nonsignatory Defendants.").

In sum, because Plaintiffs premise their claims against PDD Holdings on an alleged agency and "alter ego" relationship with Temu, they must arbitrate their claims against both Defendants on an individual basis.

## CONCLUSION

Defendants respectfully request that the Court grant their motion to compel arbitration.

Dated: February 9, 2024

Respectfully submitted,
*/s/ Serrin Turner*
Serrin Turner, One of the Attorneys for Defendants Whaleco Inc. d/b/a Temu and PDD Holdings Inc.

Mark Mester (IL Bar No. 6196140)
Gary Feinerman (IL Bar No. 6206906)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
Email: mark.mester@lw.com
gary.feinerman@lw.com

Serrin Turner (*pro hac vice*)
Matthew Valenti (*pro hac vice*)
Hadrian Luo (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: serrin.turner@lw.com
matthew.valenti@lw.com
hadrian.luo@lw.com

**APPENDIX**

**<u>Exemplar Sign-in Wrap Registration Screens Upheld by Courts</u>**
(Page 1 of 3)

| **Uber Registration Screen**<br>***See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 81 (2d Cir. 2017)** |
|---|
|  |

**APPENDIX**
(Page 2 of 3)

**Klarna Confirmation Screen**
***See Edmundson v. Klarna, Inc.*, 85 F.4th 695, 711 (2d Cir. 2023)**



**APPENDIX**
(Page 3 of 3)

**Airbnb Registration Screen**
***See Selden v. Airbnb, Inc.*, 4 F.4th 148, 152 (D.C. Cir. 2021)**

