**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEHAN ZIBOUKH, MARGRET PHILIE, VERA FIGLOCK, NICOLE MAY, TYANA DAUGHTERY, SOLALIZ HERNANDEZ, DEBRA KRYSTYN, I.E., A MINOR, CYNTHIA RODRIGUEZ, J.P., A MINOR, MIGUEL ACOSTA, VINSON MANGOS, NOAH KUPPER, J.P., A MINOR CHRISTIAN VEGA, A.H., A MINOR, AND OLAYA BOURAKKADI AMRANI, on behalf of themselves and all others similarly situated, | Case No. 1:24-cv-03733-MKB-RML |
| Plaintiffs, | District Judge Margo K. Brodie |
| v. | Magistrate Judge Robert M. Levy |
| WHALECO INC. d/b/a TEMU, and PDD HOLDINGS INC., | |
| Defendants. | |

**<u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION</u>**

Date: November 4, 2024

Serrin Turner
Matthew Valenti
Hadrian Luo
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: serrin.turner@lw.com
matthew.valenti@lw.com
hadrian.luo@lw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

PRELIMINARY STATEMENT ........ 1

FACTUAL BACKGROUND ........ 2

A. Defendants Temu and PDD Holdings ........ 2

B. All Temu Users Must Consent to Temu's Terms of Use ........ 3

C. The Terms Broadly Require That Disputes Be Arbitrated ........ 4

PROCEDURAL HISTORY ........ 5

A. Temu Users Ignore Their Agreements and File a Class Action in Court ........ 5

B. Defendants Move to Compel Arbitration and Plaintiffs Quickly Amend Their Complaint to Avoid Arbitration ........ 5

C. Plaintiffs Move to Transfer Case to This District ........ 6

D. Plaintiffs Amend Their Complaint a Second Time ........ 7

LEGAL STANDARD ........ 8

ARGUMENT ........ 9

A. Temu Users Validly Agreed to the Terms and Any Challenge to the Enforceability of the Arbitration Agreement Is Delegated to an Arbitrator ........ 9

B. The Minor Users Are Bound by the Arbitration Agreement ........ 10

C. PDD Holdings Can Enforce the Arbitration Agreement ........ 17

CONCLUSION ........ 19

## TABLE OF AUTHORITIES

### CASES

*Adams v. Suozzi*,
433 F.3d 220 (2d Cir. 2005)....................11

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009)....................14

*Astra Oil Co., Inc. v. Rover Navigation, Ltd.*,
344 F.3d 276 (2d Cir. 2003)....................17

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................8

*Bynum v. Maplebear Inc.*,
160 F. Supp. 3d 527 (E.D.N.Y. 2016) ....................8

*Choctaw Generation L.P. v. Am. Home Assur. Co.*,
271 F.3d 403 (2d Cir. 2001)....................17, 18

*Coons v. Yum! Brands, Inc.*,
2023 WL 3320149 (S.D. Ill. May 9, 2023)....................18

*CoStar Realty Info., Inc. v. Field*,
737 F. Supp. 2d 496 (D. Md. 2010)....................16

*Cupples v. Valic Fin. Advisors, Inc.*,
2014 WL 4662272 (E.D.N.Y. Sept. 18, 2014) ....................8

*Denney v. BDO Seidman, L.L.P.*,
412 F.3d 58 (2d Cir. 2005)....................17

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
885 F. Supp. 2d 894 (S.D. Ill. 2012)....................14

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023) ....................8

*Hu, et al. v. Whaleco, Inc. et al.*,
No. 23-cv-06962, ECF No. 54 (E.D.N.Y. Oct. 1, 2024) ....................1, 6, 10

*I.C. ex rel. Solovsky v. Delta Galil USA*,
135 F. Supp. 3d 196 (S.D.N.Y. 2015)....................11, 13, 15

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
672 F.3d 113 (2d Cir. 2011)....................8

*In re Currency Conversion Fee Antitrust Litig.*,
2005 WL 3304605 (S.D.N.Y. Dec. 7, 2005) ....................17

*In re StockX Customer Data Sec. Breach Litig.*,
19 F.4th 873 (6th Cir. 2021) ....................12

*In re Titanium Dioxide Antitrust Litig.*,
962 F. Supp. 2d 840 (D. Md. 2013) ....................18

*Ingram v. Neutron Holdings, Inc.*,
467 F. Supp. 3d 575 (M.D. Tenn. 2020) ....................13

*J.A. through Allen v. Microsoft Corp.*,
2021 WL 1723454 (W.D. Wash. Apr. 2, 2021), *report and recommendation adopted*, 2021 WL 1720961 (W.D. Wash. Apr. 30, 2021) ....................13

*J.P. on behalf of R.P. v. Educ. Testing Servs.*,
2021 WL 3519916 (C.D. Cal. Apr. 15, 2021) ....................12

*K.F.C. v. Snap Inc.*,
29 F.4th 835 (7th Cir. 2022) ....................11, 12

*Kauffman v. U-Haul Int'l, Inc.*,
2018 WL 4094959 (E.D. Pa. Aug. 28, 2018) ....................18

*Kuznik v. Hooters of Am., LLC*,
2020 WL 5983879 (C.D. Ill. Oct. 8, 2020) ....................13

*Maldonado v. NFL*,
2023 WL 4580417 (S.D.N.Y. July 18, 2023) ....................18

*Merrill Lynch Int'l Fin., Inc. v. Donaldson*,
895 N.Y.S.2d 698 (Sup. Ct. 2010) ....................14

*Meyer v. Uber Tech., Inc.*,
868 F.3d 66 (2d Cir. 2017) ....................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr.*,
460 U.S. 1 (1983) ....................8

*Motise v. Am. Online, Inc.*,
346 F. Supp. 2d 563 (S.D.N.Y. 2004) ....................16

*N.A. v. Nintendo of Am. Inc.*,
2023 WL 8587628 (N.D. Cal. Dec. 11, 2023) ....................12

*Nicosia v. Amazon.com, Inc.*,
384 F. Supp. 3d 254 (E.D.N.Y. 2019), *aff'd*, 815 F. App'x 612 (2d Cir. 2020) ....................15, 16

*Paragon Micro, Inc. v. Bundy*,
22 F. Supp. 3d 880 (N.D. Ill. 2014) ....................18

*Ragone v. Atl. Video*,
595 F.3d 115 (2d Cir. 2010)....................18

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010)....................11

*Roberts v. EBay Inc.*,
2017 WL 9289378 (D.S.C. July 29, 2017) ....................16

*Selden v. Airbnb, Inc.*,
4 F.4th 148 (D.C. Cir. 2021)....................9

*Shearson/Am. Exp., Inc. v. McMahon*,
482 U.S. 220 (1987)....................8

*Smith/Enron Cogeneration L.P. v. Smith Cogeneration Int'l, Inc.*,
198 F.3d 88 (2d Cir. 1999)....................17

*T.K. Through Leshore v. Bytedance Tech. Co.*,
2022 WL 888943 (N.D. Ill. Mar. 25, 2022)....................14

*Thorne v. Square*,
2022 WL 542383 (E.D.N.Y. Feb. 23, 2022)....................9

*Zachman v. Hudson Valley Fed. Credit Union*,
49 F.4th 95 (2d Cir. 2022) ....................8

**STATUTES**

9 U.S.C. § 1 *et seq*....................8

Federal Arbitration Act ("FAA")....................8

Defendants Whaleco Inc. d/b/a Temu ("Temu") and PDD Holdings Inc. ("PDD Holdings") respectfully submit this memorandum of law in support of their motion to compel arbitration of certain claims in the Second Amended Complaint ("SAC," ECF No. 64).[1] Specifically, Defendants move to compel arbitration of all claims by Plaintiffs described as Temu users (the "Temu Users"): Jehan Ziboukh, Margaret Philie, Vera Figlock, Nicole May, Tyana Daugherty, Solaliz Hernandez, Debra Krystyn, Noah Kupper, including those alleged to be minors, I.E., J.P., J.P., and A.H.[2]

## **PRELIMINARY STATEMENT**

This Court recently granted Temu's motion to compel arbitration in a related case, holding that under binding Second Circuit authority, users who created an account through Temu's app had reasonable notice of and assented to Temu's Terms of Use (the "Terms") and the arbitration agreement therein, and that any challenge to the enforceability of the arbitration agreement must be decided in arbitration under the broad delegation clause in the Terms. *See* Memorandum & Order, *Hu, et al. v. Whaleco, Inc. et al.*, No. 23-cv-06962, ECF No. 54 (E.D.N.Y. Oct. 1, 2024) (Brodie, J.) ("*Hu* MTC Order"). The Court's decision applies with full force here. The Temu Users created accounts through the same process and registration screen as in the *Hu* case and therefore, as this Court held in *Hu*, they agreed to arbitrate any disputes they had with Temu.

The only distinctions between this case and *Hu* don't make a difference. Plaintiffs here—in a transparent effort to circumvent the arbitration agreement—amended their complaint to include (i) claims by four individuals who allege they were minors when they used Temu (the

---

[1] Unless otherwise indicated, all internal citations and quotations are omitted, and all emphasis is added. Citations to "SAC" refer to the Second Amended Complaint, ECF No. 64, and citations to "Ex. _" refer to the exhibits attached to the Declaration of Michael Trinh ("Trinh Decl.").

[2] The remaining Plaintiffs are described as "Non-Users" and are subject to Defendants' concurrently filed Motion to Dismiss. Temu, however, has identified Temu accounts created by at least three of the purported "Non Users": Miguel Acosta; Vinson Mangos; and Christian Vega. *See* Trinh Decl. ¶ 65. Any alleged Non-User who in fact used Temu is subject to this Motion to Compel Arbitration for the reasons stated herein.

"Minor Users") and who purport to "disavow" the arbitration agreement they formed with Temu, and (ii) claims against Temu's parent company, PDD Holdings, which is not a named party to the Terms. Neither strategy works to avoid arbitration.

*First*, the Minor Users do not dispute that they entered into a valid agreement with Temu; instead, they only purport to disaffirm that agreement. But the law is clear that disaffirmance cannot negate contract formation—it is merely a potential defense to the *enforceability* of the agreement. Any such defense is delegated to the arbitrator under Section 19.7 of the Terms, which grants exclusive authority to the arbitrator to resolve enforceability disputes. To the extent the Minor Users intend to pivot and claim that they never created a Temu account in the first place and only "accessed" some other (unidentified) person's account, courts have likewise rejected this type of attempted end-run around contract terms. Non-signatories are estopped from avoiding an arbitration agreement when—like here—they step into the shoes of the account-holder or voluntarily obtain the benefit of the underlying service.

*Second*, Plaintiffs cannot evade the arbitration agreement by naming Temu's parent—PDD Holdings—as a defendant. Although PDD Holdings is not a named party to the Terms, settled Second Circuit authority holds that a non-signatory defendant may enforce an arbitration agreement under an estoppel theory where the plaintiff alleges that the non-signatory engaged in concerted misconduct with a signatory defendant, or where the claims against the non-signatory are intertwined with the underlying contract. That is precisely what Plaintiffs allege here, so all the Temu Users' claims against PDD Holdings must also be arbitrated.

## FACTUAL BACKGROUND

### A. Defendants Temu and PDD Holdings

Temu is an e-commerce company that connects consumers with sellers, manufacturers, and brands around the world. SAC ¶¶ 1, 32, 83–84. Temu makes its services available to consumers

through its website (https://temu.com) and mobile apps on Android and Apple iOS devices. *Id.* ¶ 51. The Temu app is "extremely popular" and had "more than 100 million users in the United States by May 2023." *Id.* ¶ 3. PDD Holdings is Temu's parent company. *Id.* ¶ 32. It is incorporated in the Cayman Islands and has its principal executive office in Ireland. *Id.* PDD Holdings is a holding company for its subsidiary businesses (including Temu) and does not itself conduct any substantial business.

### B. All Temu Users Must Consent to Temu's Terms of Use

To register a Temu account, users are required to accept Temu's Terms, whether the user registers on Temu's app or website. *See* Trinh Decl. ¶¶ 4–9. Specifically, as part of the registration process, each user is shown a prompt (the "Registration Prompt") with: (i) a field to enter the email or phone number they will use to register, and a corresponding "Continue" button; and (ii) buttons allowing the user to "Continue" by instead registering via their existing Google, Facebook, Apple, or Twitter/X account. *See id.* Immediately below these options is a notice stating: "By continuing, you agree to our **Terms of Use** and **Privacy & Cookie Policy**." *Id.* The bolded words "Terms of Use" and "Privacy & Cookie Policy" hyperlink to the respective agreements. *See id.* ¶ 6. The Registration Prompt is uncluttered and displayed entirely on one screen—so the user need not scroll down to see any part of it, including the link to the Terms. *Id.* ¶ 5; Ex. A. After a user registers a Temu account, if they ever log out, they must agree to the Terms again each time they log back in—at which point they again are shown the Registration Prompt. *See* Trinh Decl. ¶ 7.

Further, the Terms expressly prohibit minors from creating accounts, stating that "[t]o use the Services, you represent that you are at least eighteen (18) years old and of legal age to form a binding contract." Ex. B at § 2.1. Minors that are "at least 13 years of age are only permitted to use our Services through an Account owned by a parent or legal guardian with their appropriate permission and under their direct supervision." *Id.* Under no circumstancs are minors "under 13

years [] permitted to use Temu or the Services." *Id.* In addition, users "agree that [they] shall monitor [their] Account to restrict use by minors, and [they] will accept full responsibility for any unauthorized use of the Services by minors." *Id.* at § 2.3.

### C. The Terms Broadly Require That Disputes Be Arbitrated

The Terms make clear that disputes arising from a user's use of Temu's services are broadly subject to arbitration. The Terms conspicuously call attention to the arbitration agreement, noting at the beginning of the document, in all caps and bold font, that "**SECTION 19 CONTAINS, AMONG OTHER THINGS, AN AGREEMENT TO ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS, THAT ALL DISPUTES BETWEEN YOU AND [TEMU] BE RESOLVED BY BINDING AND FINAL ARBITRATION.**" Ex. B § 1.5 (emphasis in original). Section 19, titled "Arbitration Agreement," in turn provides that "any dispute, claim, or disagreement arising out of or relating in any way to your access to or use of the Services … will be resolved by binding arbitration … rather than in court." *Id.* § 19.1. The limited exceptions to this provision—for claims brought in small claims court and claims for intellectual property infringement—are inapplicable here. *Id.* Section 19 also contains a class action waiver, generally providing, again in all caps and bold, that claims may be brought "**ONLY ON AN INDIVIDUAL BASIS AND NOT ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS**." *Id.* § 19.4 (emphasis in original).

The arbitration agreement contains a delegation clause broadly requiring that disputes regarding the arbitration provision, including disputes regarding the provision's enforceability, be decided by an arbitrator in the first instance. With limited exceptions inapplicable here, the delegation clause provides: "The arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application

of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement … ." *Id.* § 19.7.

## PROCEDURAL HISTORY

### A. Temu Users Ignore Their Agreements and File a Class Action in Court

Plaintiffs first filed this putative class action against Temu and PDD Holdings on November 3, 2023 in the Northern District of Illinois, asserting various privacy causes of action on behalf of a putative nationwide class of Temu users and three statewide subclasses. ECF No. 1 ¶¶ 129, 144–281 ("Original Complaint"). Their claims are premised on baseless conjecture—lifted extensively from a report by a known short-seller with an interest in driving down stock prices—that Temu's app improperly collects personal data from users' mobile devices. *Id*. ¶¶ 56–79.

The Original Complaint named seven Plaintiffs: Ziboukh, Philie, Figlock, May, Daugherty, Hernandez, and Krystyn. Plaintiffs' counsel voluntarily provided an account identifier for each of these Plaintiffs, based on which Temu confirmed that each had created a Temu account and agreed to the Terms. *See* Trinh Decl. ¶¶ 12–13. The account records further showed that all of the seven original Plaintiffs logged out and back into their Temu accounts at least once after initially registering and, as a result, were put on notice of, and chose to accept, the Terms on multiple occasions. *Id*. ¶¶ 14–45.

### B. Defendants Move to Compel Arbitration and Plaintiffs Quickly Amend Their Complaint to Avoid Arbitration

On February 9, 2024, Defendants moved to compel arbitration in the Northern District of Illinois. ECF No. 18. A week later, without filing any opposition to the motion to compel, Plaintiffs filed the First Amended Complaint (the "FAC"). ECF No. 21. The FAC left Plaintiffs' substantive allegations largely unchanged. Instead, in a transparent attempt to avoid arbitration, the FAC added ten new Plaintiffs (who are also included in the Second Amended Complaint). Four of the newly

added Plaintiffs are Temu Users who allegedly "accessed the Temu app while [] under the age of 13" (*i.e.*, the Minor Users). FAC ¶¶ 17, 20, 26, 29 (and SAC ¶¶ 18, 21, 27, 30). Five of the new Plaintiffs (the "Non-Users") are alleged to have "had electronic communications with a Temu user … but [] is not a Temu user himself [or herself]." FAC ¶¶ 18, 21, 24, 27, 30 (and SAC ¶¶ 19, 22, 25, 28, 31). The tenth is a Temu User who is not alleged to be a minor.

### C. Plaintiffs Move to Transfer Case to This District

Days before Defendants were due to file their motion to compel arbitration (for the second time) in the Northern District of Illinois, Plaintiffs abruptly informed Defendants that they would be moving to transfer this case to this District. Notwithstanding Defendants' request to meet and confer the following week, Plaintiffs proceeded to file their transfer motion that evening. ECF No. 30. The case was transferred to this District ("EDNY") on May 8, 2024 and marked as related to *Hu v. Whaleco, Inc.*, No. 23-cv-06962-MKB-RML (E.D.N.Y.) (the "*Hu* litigation"). ECF No. 39. This case was assigned to Your Honor shortly thereafter.

After their case was transferred to the EDNY, Plaintiffs filed a motion to intervene or, in the alternative, to participate as *amicus curiae* in the *Hu* litigation. *Hu*, ECF No. 26. The Court denied Plaintiffs' request to intervene but allowed them to participate as *amicus curiae*. *See Hu*, May 29, 2024 Order. Following briefing on the motion to compel arbitration in the *Hu* litigation—including by the *Ziboukh* Plaintiffs participating as *amicus curiae*, whose briefing dwarfed that of the *Hu* plaintiffs and constituted most of the arguments the Court considered—on October 1, 2024, the Court granted Temu's motion to compel arbitration in full. *See Hu* MTC Order. The Court found that the users had manifested assent to the Terms because the Registration Prompt was uncluttered and the language indicating assent was spatially and temporally coupled with the buttons to click "Continue" to create an account. *Id.* at 26–32. Further, the Court held that any issues of enforceability had been clearly delegated to the arbitrator to decide. *Id.* at 38.

### D. Plaintiffs Amend Their Complaint a Second Time

Following the parties' August 2, 2024 pre-motion conference, and based on Your Honor's comments at the conference, Plaintiffs opted to amend their complaint a second time. Plaintiffs filed the SAC on September 20, 2024. ECF No. 64. The SAC retains the same named Plaintiffs as the FAC and does not add or modify any allegations with respect to contract formation or validity. *See* SAC ¶¶ 18, 19, 21, 22, 25, 27, 28, 30, 31 (identifying Temu Users and the Minor Users). The sole exception is that, in the SAC, Plaintiffs now claim that the Minor Users disaffirm their contracts with Temu. Specifically, each Minor User (A.H., I.E., J.P., and J.P.) alleges that they "downloaded [or accessed] the Temu app while [they were] under the age of 13" and that "[the Minor User] and [their] parents disavow any alleged contract or agreement between [the Minor User] and Defendants." SAC ¶¶ 18, 21, 27, 30.

While Plaintiffs' counsel previously provided account identifiers for all other named Plaintiffs, they have refused to do the same for the Minor Users, thereby preventing Temu from identifying their account records. Trinh Decl. ¶¶ 46–47.[3] As a matter of logic, the Minor Users either created their own Temu account or used the account of (presumably) their parent or some other family member. The SAC seems deliberately vague on which is the case. SAC ¶¶ 18, 21, 27, 30. But either would be contrary to the Terms, which prohibit a user from sharing their account and prohibit minors from using the Temu service without supervision (*see supra* at 3–4). Based on the little information provided for the Minor Users, Temu identified records that appear to be

[3] On November 1, 2024, Plaintiffs provided names and cities of residence for the Minor Users, but continued to refuse to provide account identifiers (*i.e.*, email addresses), which Temu could use to definitively locate their account records, if any. Plaintiffs have no legal basis to withhold from Defendants account identifiers for the named Plaintiffs in this case—particularly given that Defendants repeatedly assured Plaintiffs that they would maintain the information in confidence. Plaintiffs stated that the identifiers were "discovery" and the Court stayed discovery in this matter; but identifying the named Plaintiffs is a requirement to proceed in federal court, not discovery. *See* FED. R. CIV. P. 10(e); *cf. Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006) (plaintiff could proceed anonymously where "defendants already know plaintiff's true identity").

associated with accounts that Minor Users J.P. (of Illinois) and J.P. (of New York) created. *See* Trinh Decl. ¶¶ 49, 55, 60. However, Defendants do not have enough information to confirm specific accounts for the remaining Minor Users without receiving their identifiers, such as email addresses or phone numbers, which Plaintiffs' counsel has declined to provide. *See* Trinh Decl. ¶¶ 46.[4]

## LEGAL STANDARD

The Terms provide that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., will govern the interpretation and enforcement of the arbitration agreement. *See* Ex. B § 19.5. "[T]he FAA was designed to promote arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011), and requires that "the courts rigorously enforce arbitration agreements." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 220 (1987). In the Second Circuit, courts ask "(1) whether the parties entered into a valid agreement to arbitrate, and if so, (2) whether the dispute comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig*., 672 F.3d 113, 128 (2d Cir. 2011). "When enforcing an arbitration agreement, as with any other contract, the parties' intentions control." *Bynum v. Maplebear Inc*., 160 F. Supp. 3d 527, 533–34 (E.D.N.Y. 2016). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*, 460 U.S. 1, 24–25 (1983).

"In deciding motions to compel, courts apply a standard similar to that applicable for a motion for summary judgment." *Edmundson v. Klarna, Inc*., 85 F.4th 695, 702 (2d Cir. 2023). Once the moving party shows the existence of an agreement to arbitrate, "the burden shifts to the party seeking to avoid arbitration to show the agreement to be inapplicable or invalid." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 102 (2d Cir. 2022). The nonmoving party must

[4] Plaintiff Ziboukh is alleged to have been a minor when she used Temu but is not included as part of Plaintiffs' subclass of Minor Users. SAC ¶ 29.

come forward with "specific facts showing that there is a genuine issue for trial." *Cupples v. Valic Fin. Advisors, Inc.*, 2014 WL 4662272, at *3 (E.D.N.Y. Sept. 18, 2014).

## ARGUMENT

### A. Temu Users Validly Agreed to the Terms and Any Challenge to the Enforceability of the Arbitration Agreement Is Delegated to an Arbitrator

The Temu Users agreed to arbitrate their claims. Each was presented with the Registration Prompt informing them that, by continuing, they would be agreeing to the Terms. The Registration Prompt is in a format that Second Circuit courts—including this Court—have held is sufficient to form a valid agreement. The Court should apply its recent ruling in the *Hu* litigation, which addressed the same Registration Prompt, and find that the Temu Users validly agreed to the Terms.

Determining whether an online terms-of-use agreement was formed turns on whether a user "had reasonable notice of the terms of use" and "manifested assent" thereto. *Thorne v. Square*, 2022 WL 542383, at *7 (E.D.N.Y. Feb. 23, 2022). This objective standard is applied through the lens of a "reasonably prudent smartphone user." *Meyer v. Uber Tech., Inc.*, 868 F.3d 66, 77–78 (2d Cir. 2017). Courts determine the validity of sign-in wrap agreements like Temu's by "look[ing] to the layout and language of the site to decide whether it would provide a reasonably prudent smartphone user with reasonable notice that a click—*i.e.*, signing up—will manifest assent to an agreement." *Selden v. Airbnb, Inc.*, 4 F.4th 148, 156 (D.C. Cir. 2021); *see also Meyer*, 868 F.3d at 75 (same). The Registration Prompt shown during Temu's registration process satisfies the reasonable notice standard. It presented the Terms to Plaintiffs through a hyperlink appearing in bold font, in an uncluttered format, which was immediately visible on a single screen. Trinh Decl. ¶¶ 5–6; Ex. A.

In the *Hu* litigation, the parties thoroughly briefed the sufficiency of the Registration Prompt, including more than 45 pages of briefing by Plaintiffs in this case (as *amicus curiae*)

challenging the validity and enforceability of the Terms. *See Hu*, ECF Nos. 45, 49, 51, 51-1. After considering all of these arguments, the Court explained in detail why the Registration Prompt provided reasonably conspicuous notice to Temu users. *See Hu* MTC Order at 20–32. The Court cited binding Second Circuit authorities in *Edmundson* and *Meyer*, among others, and held that Temu's Registration Prompt provided sufficient notice to users of the Terms because it "appears relatively uncluttered, is visible at once, and the notice and bolded hyperlinks are spatially and temporally coupled with a user's creation of an account." *See id*. at 25; Trinh Decl., Ex. A. Accordingly, by clicking one of the "Continue" buttons on the Registration Prompt, users "unambiguously manifested assent to the Terms … [and] entered into an agreement to arbitrate." *Hu* MTC Order at 38. Further, the Court also found that the Terms contain a "clear and unmistakable" delegation clause that expressly delegates any question of arbitrability and enforceability to an arbitrator, subject to certain exceptions inapplicable here. *Id.* at 41. Accordingly, any challenge to the enforceability of the arbitration agreement must be resolved by the arbitrator. *Id.* at 44.

The Temu Users proceeded through the same Registration Prompt as the *Hu* plaintiffs and in doing so agreed to the same arbitration agreement. *Compare* Trinh Decl. ¶¶ 5–6 and Exs. A and B, *with Hu* MTC Order at 4–7 (describing Registration Prompt and arbitration agreement). Accordingly, the Court should reach the same conclusion about the validity and enforceability of the arbitration agreement in this case. For all the reasons explained in *Hu,* the Temu Users should be compelled to arbitrate their claims against Temu.

### B. The Minor Users Are Bound by the Arbitration Agreement

Plaintiffs cannot avoid arbitration by adding the Minor Users as Plaintiffs. The Minor Users do not even dispute they formed a valid arbitration agreement with Temu—nor could they, for the reasons described above. Instead, they merely allege that they "disavow" their agreement with

Temu (SAC ¶¶ 18, 21, 27, 30)—but contracts with minors are, at most, voidable (not void), and disaffirmance is thus a defense to the *enforceability* of the agreement that is subject to the Terms' delegation clause. And to the extent the Minor Users claim they only accessed *another user's* account, that argument fails too, because one who knowingly accesses and benefits from another's account is estopped from disclaiming the contract to which the account-holder agreed.

### 1. The Minor Users' Alleged Disaffirmance Is a Defense Delegated to the Arbitrator

The Minor Users allege that they "disavow any alleged contract or agreement" with Temu. SAC ¶¶ 18, 21, 27, 30. That is insufficient to avoid arbitration because disavowing or disaffirming a contract does not impact whether an arbitration agreement was formed in the first place. Rather, it is a defense to the *enforceability* of the agreement and, as such, is subject to the delegation clause in Section 19.7 of the Terms.

Under New York law, "contracts signed by minors are voidable, not void." *I.C. ex rel. Solovsky v. Delta Galil USA*, 135 F. Supp. 3d 196, 208 (S.D.N.Y. 2015). While "[v]oidable contracts are subject to rescission," they "create legal obligations." *Adams v. Suozzi*, 433 F.3d 220, 227 (2d Cir. 2005). That is, "the protection New York law provides to minors is to allow them the right to disaffirm a contract … not to find that no enforceable contract exists." *Solovsky*, 135 F. Supp. 3d at 208. Accordingly, even if the Minor Users could disaffirm the Terms or the arbitration agreement, that does not change the fact that they entered into a valid agreement with Temu. It simply means that they are asserting a defense to enforcement. And under Section 19.7 of the Terms, if the Minor Users wish to raise that defense, they must do so in arbitration. *See K.F.C. v. Snap Inc.*, 29 F.4th 835, 838 (7th Cir. 2022) ("As long as state law permits a child to ratify a contract, *youth must be a defense* rather than an obstacle to a contract's formation, and *as a defense it goes to the arbitrator*."); *see generally Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 66 (2010)

(enforcing delegation clause providing that "[t]he [a]rbitrator … shall have exclusive authority to resolve any dispute relating to the … enforceability … of this [a]greement").

The Seventh Circuit's decision in *K.F.C. v. Snap* is directly on point. The plaintiff there alleged that "[w]hen she was 11 years old, [she] signed up for a Snapchat account," even though "[t]he enrollment terms specify that a person must be at least 13 to have an account." 29 F.4th at 836. The plaintiff "denie[d] that the arbitration clause [in Snap's terms of use] (or any other part of the agreement) binds her" on account of her age. *Id.* at 837. The Seventh Circuit disagreed for reasons that apply equally here. The court explained that "agreements [with minors are] voidable, which means that children may elect how to proceed once they come of age." *Id.* Accordingly, "the age of the contracting parties [is] a potential defense to enforcement," which "means in turn that the potential defense goes to the arbitrator." *Id.*

The Sixth Circuit reached the same conclusion in *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873 (6th Cir. 2021). There, minor plaintiffs "assert[ed] that the infancy doctrine 'invalidates' the [] Terms" to which they agreed when they used the defendant's service. *Id.* at 882. The court rejected that argument, holding that "plaintiffs' infancy argument does not concern the formation or existence of a contract" and that "a minor's contract is not synonymous with a nonexistent contract." *Id.* at 883. Rather, "[i]t is elementary that an infant's contract, with certain exceptions [], is voidable … . Thus, plaintiffs' infancy defense is a matter of enforceability covered under the delegation provision" in the applicable terms of use. *Id* at 883-884; *see also N.A. v. Nintendo of Am. Inc.*, 2023 WL 8587628, at *4 (N.D. Cal. Dec. 11, 2023) ("The court need not resolve this dispute because the issue of disaffirmation does not relate to contract formation; rather, it goes to whether the User Agreement is enforceable, an issue that the parties delegated to an arbitrator."); *J.P. on behalf of R.P. v. Educ. Testing Servs.*, 2021 WL 3519916, at *4 (C.D. Cal.

Apr. 15, 2021) ("Plaintiffs' infancy defense relates to the enforceability of the contracts and, therefore, is an issue to be decided by the arbitrator.").[5]

Hence, if the Minor Users wish to disavow or disaffirm their agreement with Temu, that is a defense to enforcement that is delegated to the arbitrator under Section 19.7 of the Terms.

### 2. The Minor Users Cannot Disaffirm the Terms Because They Cannot Return the Benefit Received Under the Terms

Even if this Court were to entertain the Minor Users' disaffirmance argument, they are precluded from disaffirming Temu's Terms. Each Minor User alleges they used and therefore received the benefit of the Temu services (*see* SAC ¶¶ 18, 21, 27, 30), and it is not possible for them to now return those benefits. Under New York law, while minors may have the right to disaffirm a contract, "[a]fter disaffirmance, the infant is not entitled to be put in a position superior to such a one as he would have occupied if he had never entered into his voidable agreement. He is not entitled to retain an advantage from a transaction which he repudiates." *Solovsky*, 135 F. Supp. 3d at 209. "The requirement that a minor not retain an advantage from a repudiated contract generally requires the minor to restore consideration benefits received as part of the contract." *Id.* "If a minor cannot return the benefits obtained … then she is effectively precluded from disaffirming the contract in order to get back the consideration she has given." *Id.* at 210.

The benefit the Minor Users have obtained from agreeing to Temu's Terms is being able to use the Temu service to shop for and purchase goods. Since the Minor Users allegedly have

[5] *Accord, e.g., J.A. through Allen v. Microsoft Corp.*, 2021 WL 1723454, at *9 (W.D. Wash. Apr. 2, 2021), *report and recommendation adopted*, 2021 WL 1720961 (W.D. Wash. Apr. 30, 2021) (finding that "the issue of the minors' disaffirmance of the warranty agreements is a challenge to the validity of the agreements as a whole and an arbitrability issue to be decided by the arbitrator"); *Kuznik v. Hooters of Am., LLC*, 2020 WL 5983879, at *5 (C.D. Ill. Oct. 8, 2020) (finding that the delegation clause "delegates all questions of arbitrability, including questions of the Arbitration Agreement's validity or voidability [due to plaintiff's minority at the time of contract], to an arbitrator"); *Ingram v. Neutron Holdings, Inc.*, 467 F. Supp. 3d 575, 584 (M.D. Tenn. 2020) ("[T]he plaintiffs' claim that the User Agreement as a whole and the Arbitration Provision specifically are void based on Kelcie Ingram's minority at the time of contracting is a question of arbitrability that must be referred to the arbitrator.")

already intentionally benefited from Temu's offerings, they are barred from disaffirming the contract. *See T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *13 (N.D. Ill. Mar. 25, 2022) ("[T]he minor class members would have little chance of disaffirming the agreement because they cannot return the benefits obtained from TikTok."); *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 898–900 (S.D. Ill. 2012) (holding that minor plaintiffs could not disaffirm forum-selection clause in Facebook user agreement because they had already accepted the benefits of the contract by using Facebook).

### 3. The Minor Users Are Bound by the Terms Even if They Accessed Temu Through Another Person's Account

If Plaintiffs assert that the Minor Users never formed an agreement with Temu because they only accessed *someone else's* account—presumably a family member's—that defense to arbitration would fail too. For one thing, Plaintiffs articulate no such theory in the SAC, nor have they provided Defendants with identifiers for the accounts used by the Minor Users indicating that they accessed accounts belonging to someone else. Trinh Decl. ¶¶ 46–48.[6] Regardless, even if no Minor Users created their own account, the Terms would still be enforceable against them because "traditional principles of state law allow a contract to be enforced by or against nonparties" through equitable doctrines, including estoppel. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). Specifically, New York law recognizes principles of equitable estoppel and direct-benefits estoppel, both of which apply here. *See Merrill Lynch Int'l Fin., Inc. v. Donaldson*, 895 N.Y.S.2d 698, 702 (Sup. Ct. 2010) (stating that a non-party can be compelled to arbitrate under estoppel theories, and that "consent to arbitration has been inferred where the nature of the relationship between a signatory and non-signatory indicates that the agreement to arbitrate should be extended

[6] Notably, despite Plaintiffs' refusal to provide Defendants with any identifiers for the accounts used by the Minor Users, Defendants have identified accounts that appears to have been created by at least two of these individuals, indicating that at least some Minor Users created their own Temu accounts. *See* Trinh Decl. ¶¶ 46–50, 60.

in the interest of fairness").[7] That is, "[w]hen one uses an account to transact online [like the Minor Users], an implicit representation is made that they are the person identified with the account, and thus are bound by the same terms and conditions previously agreed to by the account's true owner." *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 274 (E.D.N.Y. 2019), *aff'd*, 815 F. App'x 612 (2d Cir. 2020). This is consistent with the Terms themselves, which state that, to the extent a minor under the age of thirteen uses another's account (which is prohibited), the account-holder's acceptance of the Terms should be attributed to the minor. *See* Ex. B at § 2.3 ("You agree that you shall monitor your Account to restrict use by minors, and you will accept full responsibility for any unauthorized use of the Services by minors.").

The holding in *Nicosia* is on all fours. There, a husband used his wife's Amazon account to purchase a product and later sued Amazon after he was allegedly harmed by the product. 384 F. Supp. 3d at 271. Amazon moved to compel arbitration based on terms of use that the wife accepted when she created her account, but the husband claimed he was not bound by the terms because he was not the account-holder. *Id.* The court rejected the non-signatory husband's attempt to avoid arbitration, holding that his "use of the Account was tantamount to a representation that he was [the account-holder] (and therefore bound by the arbitration provision to which [the account-holder] had previously agreed)," and that as a matter of "equity and fairness, he should be bound by the consequences of that representation as though it were true." *Id.* at 274. This had to be the rule, the court explained, for otherwise companies would have no way to prevent evasion of their terms of use:

---

[7] Direct-benefits estoppel prevents minors from disaffirming the contract where they have already retained the benefits of the contract. *Solovsky*, 135 F. Supp. 3d at 210 ("If a minor cannot return the benefits obtained . . . she 'is effectively precluded from disaffirming the contract in order to get back the consideration' she has given."). The benefit of agreeing to Temu's Terms is to be able to use the Temu service. Since the Minor Users have already used the Temu service, they can no longer return the benefit of the agreement, and therefore should be precluded from disaffirming the contract.

> If the validity of these contract terms waxed and waned depending on the identity of the human user behind the screen, it would impose a cloud of uncertainty over any contract formed over the internet. Any individual could avoid the terms of a website by simply logging on to a friend's or relative's account instead of creating their own. Common sense dictates that this could not possibly be the rule; and where common sense goes, the law must follow.

*Id.* at 272. The result is the same whether analyzed under equitable estoppel or direct benefits estoppel principles. *Id.* at 275 ("[U]nder either a traditional theory of equitable estoppel or direct benefits estoppel, Plaintiff is bound by the [] Arbitration Agreement.").

This Court should follow the same reasoning: a user's consent to an agreement in registering an online account must extend to others who subsequently use that account, whether husband, child, or anyone else; otherwise, the online service has no way to ensure that usage of its service is subject to its terms. *See Motise v. Am. Online, Inc.*, 346 F. Supp. 2d 563, 566 (S.D.N.Y. 2004) ("Any other conclusion would permit individuals to avoid the Defendant's Terms of Service simply by having third parties create accounts and then using them as the Plaintiff did. As such, the Plaintiff, as a user of another's account, is subject to the Terms of Service … ."); *CoStar Realty Info., Inc. v. Field*, 737 F. Supp. 2d 496, 50506 (D. Md. 2010) ("[P]ursuant to a derivative rights theory a third party user of a contracting party's online account is bound by the same user agreement as the contracting party even though the third party user was not presented with and did not assent to the online user agreement."); *Roberts v. EBay Inc.*, 2017 WL 9289378, at *8 (D.S.C. July 29, 2017) ("Whether the Plaintiff was the account holder or not, he was bound by the PayPal user agreement.").

### C. PDD Holdings Can Enforce the Arbitration Agreement

Although not a named party to the Terms, PDD Holdings is nonetheless entitled to enforce the Arbitration Agreement under an estoppel theory.[8] Under Second Circuit precedent, a signatory to an arbitration agreement should be "estopped from avoiding arbitration" with a non-signatory when "the issues the nonsignatory was seeking to resolve in arbitration were intertwined with the agreement that the estopped party had signed." *Astra Oil Co., Inc. v. Rover Navigation, Ltd.*, 344 F.3d 276, 279 (2d Cir. 2003). In determining whether this estoppel theory should apply to compel a signatory to arbitrate claims with a non-signatory, courts consider "the relationship between the parties, the contracts they signed, and the issues that arose between them." *Id.* Accordingly, the Second Circuit has held that the estoppel theory would apply where the dispute between the non-signatory and the signatory is "closely related to the underlying dispute" between the estopped signatory and the other signatory under the arbitration agreement, or where the estopped signatory has "treated affiliated companies—only some of which were signatories to the agreement containing the arbitration clause the other affiliates sought to enforce—as a single entity in filing claims against them … ." *Id.* at 279–80 (citing *Choctaw Generation L.P. v. Am. Home Assur. Co.*, 271 F.3d 403, 407 (2d Cir. 2001), and *Smith/Enron Cogeneration L.P. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97–98 (2d Cir. 1999)).

The principle of estoppel applies here and precludes the Users from avoiding arbitration with PDD Holdings. Plaintiffs' own "allegations of concerted misconduct between a signatory and a nonsignatory [] establish the close relationship required to establish estoppel." *In re Currency Conversion Fee Antitrust Litig.*, 2005 WL 3304605, at *5 (S.D.N.Y. Dec. 7, 2005) (citing *Denney*

---

[8] Defendants are contesting that the Court has personal jurisdiction over PDD Holdings, as stated in the concurrently filed Motion to Dismiss. In the alternative, PDD Holdings should be entitled to enforce the arbitration agreement and class action waiver in the Terms.

*v. BDO Seidman, L.L.P.*, 412 F.3d 58, 70 (2d Cir. 2005)).[9] That is precisely the case here, as Plaintiffs allege that Temu and PDD Holdings—the signatory and non-signatory—"constituted a single enterprise with a unity of interest." SAC ¶ 39; *see also id.* ¶ 35 (alleging that PDD Holdings "directed the operations of [] Temu"). Courts compel arbitration of a plaintiff signatory's claims against a non-signatory defendant based on such allegations. *See, e.g.*, *Ragone v. Atl. Video*, 595 F.3d 115, 127–28 (2d Cir. 2010) (estopping plaintiff from objecting to arbitration with both signatory employer and non-signatory joint employer); *see also Maldonado v. NFL*, 2023 WL 4580417, at *4 (S.D.N.Y. July 18, 2023) (holding that allegations of "coordinated behavior between signatories and nonsignatories … based on the same facts, are inherently inseparable, [and] fall within the scope of the arbitration clauses at issue").[10]

In addition, the present dispute directly arises out of Plaintiffs' use of Temu's services and therefore Plaintiffs' obligations are governed by the Terms and the arbitration agreement contained therein, which PDD Holdings now seeks to enforce. All of Plaintiffs' claims are based on a theory that Temu improperly collected or used their data (*see, e.g.*, SAC ¶¶ 4-6) and, accordingly, implicate the Terms, which govern the data that Temu collects about Users and how that data may be used. *See* Ex. B at § 4.1 (stating that Temu's "Privacy Policy provides information about how

---

[9] To be clear, Defendants dispute Plaintiffs' characterization of the relationship between Temu and PDD Holdings and deny PDD Holdings' involvement in any conduct alleged in the SAC. However, that is irrelevant to whether PDD Holdings can enforce the arbitration agreement and class action waiver here, as Plaintiffs are bound by their own allegations. *See, e.g.*, *Coons v. Yum! Brands, Inc.*, 2023 WL 3320149, at *7 (S.D. Ill. May 9, 2023) ("The Seventh Circuit has compelled arbitration where the plaintiff alleges a non-signatory has some sort of agency relationship, *regardless of whether the allegations are true or disputed*.").

[10] Courts around the country routinely apply this rule. *See, e.g.*, *Coons*, 2023 WL 3320149, at *7–8 (finding, where plaintiff "allege[d] the defendants have an agency relationship with [the signatory to the arbitration], going so far as alleging alter ego and joint employer scenarios," that "Defendants, due to the accusations of knowledge and control over [the signatory], have the right to enforce the arbitration agreement because of their alleged agency relationship"); *Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 890 (N.D. Ill. 2014) (permitting non-signatory defendant to enforce arbitration agreement because plaintiff alleged the non-signatory acted in concert with a signatory defendant); *Kauffman v. U-Haul Int'l, Inc.*, 2018 WL 4094959, at *12 (E.D. Pa. Aug. 28, 2018) (holding that "a plaintiff who treats the non-signatory and signatory party as jointly liable for the same alleged conduct is estopped from resisting arbitration with the nonsignatory"); *see also In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 852 (D. Md. 2013) ("For the same equitable reasons, … class action waivers can be enforced by the nonsignatory Defendants.").

we [collect and use your data]" and "is part of and is governed by these Terms and by agreeing to these Terms, you agree to be bound by the Privacy Policy"). The claims are therefore "intertwined with the underlying contractual obligations" of the Users, including to the extent they seek to bring those same claims against PDD Holdings. *Choctaw Generation L.P.*, 271 F.3d at 406.

In sum, because the Users themselves allege a close relationship between Temu and PDD Holdings, and their claims are directly intertwined with the Terms, they must arbitrate their claims against both Defendants on an individual basis.

## CONCLUSION

For the foregoing reasons, the Court should compel the Users to arbitrate their claims against Defendants on an individual basis.

Dated: November 4, 2024

Respectfully submitted,

*/s/ Serrin Turner*

Serrin Turner
Matthew Valenti
Hadrian Luo
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: serrin.turner@lw.com
matthew.valenti@lw.com
hadrian.luo@lw.com

*Attorneys for Defendants Whaleco Inc. d/b/a Temu and PDD Holdings Inc.*