**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEHAN ZIBOUKH, MARGRET PHILIE, VERA FIGLOCK, NICOLE MAY, TYANA DAUGHTERY, SOLALIZ HERNANDEZ, DEBRA KRYSTYN, I.E., A MINOR, CYNTHIA RODRIGUEZ, J.P., A MINOR, MIGUEL ACOSTA, VINSON MANGOS, NOAH KUPPER, J.P., A MINOR CHRISTIAN VEGA, A.H., A MINOR, AND OLAYA BOURAKKADI AMRANI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WHALECO INC. d/b/a TEMU, and PDD HOLDINGS INC.,<br><br>Defendants. | Case No. 1:24-cv-03733-MKB-RML<br><br>District Judge Margo K. Brodie<br><br>Magistrate Judge Robert M. Levy |

**<u>DECLARATION OF MICHAEL TRINH IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION</u>**

I, Michael Trinh, declare as follows:

1. I am the Customer Service Manager for Defendant Whaleco Inc. d/b/a Temu ("Temu"). I have held this position at Temu since October 2022. In my current position, I am responsible for managing customer service. Through this role, I have responsibilities related to, and am thoroughly familiar with, how users sign up for an account on Temu's website, www. temu. com (the "Temu Website") or mobile application (the "Temu App"), and how Temu notifies users of, and requires them to accept, its Terms of Use (the "Terms"). In my professional capacity, I am also generally familiar with Temu's business records and its record-keeping policies and practices, including records relating to the Temu Website and Temu App.

2. I have reviewed the original complaint (the "Original Complaint"), the amended complaint (the "Amended Complaint"), and the second amended complaint (the "Second Amended Complaint") in this action, and I make this declaration in support of Temu and PDD Holdings Inc.'s motion to compel arbitration of the claims brought in the Second Amended Complaint (the "Motion"). I have personal knowledge of the facts stated herein, and if called as a witness, I could and would testify to them competently.

## I. Users Must Accept Temu's Terms as a Prerequisite to Creating an Account

3. Temu is an e-commerce company that connects consumers with millions of merchandise partners, manufacturers, and brands. Users may access Temu via the Temu Website through internet browsers on computers or mobile devices, or via the Temu App on mobile devices, such as Apple or Android phones or tablets.

4. To register a Temu account, users have always been required to accept Temu's Terms, whether the user registers on the Temu Website or via the Temu App. The Plaintiffs in the Second Amended Complaint state that they used the Temu App, and so I describe below the process for creating an account on, and signing into, the App.

5. Specifically, when a user clicks "Sign in/Register" on the Temu App, a registration prompt appears before the user can proceed (the "Registration Prompt"). Throughout the November 2022-November 2023 time period relevant here (when, as discussed below, those Plaintiffs whose Temu accounts have been identified by Temu created their accounts), the Registration Prompt generally appeared as shown in Exhibit A to this Declaration.[1]

---

[1] The screenshot shown in Exhibit A specifically depicts how the Registration Prompt would have appeared to a user on an Apple device. On an Android device, the option to "Continue with Apple" does not appear, but otherwise the screen would be identical to what is shown in Exhibit A. Further, during the course of October 2023, Temu made minor cosmetic changes to the Registration Prompt, but it remained materially the same.

6. As reflected in Exhibit A, immediately underneath the "Continue" buttons on the Registration Prompt, the following text appears: "By continuing, you agree to our **Terms of Use** and **Privacy & Cookie Policy**." The bolded phrases link to Temu's Terms of Use and Privacy Policy, respectively, which users may review before accepting them. Users can proceed to create a Temu account only by clicking one of the "Continue" options on the screen.

7. In addition, if a user logs out after registering an account, then, each time they log back in, the user again is shown the Registration Prompt and must assent to the Terms, by inputting their credentials and pressing one of the "Continue" options.

8. I understand that the following Plaintiffs in the Second Amended Complaint seek to represent a class of Temu users, and therefore I understand that each of these Plaintiffs claims to be a Temu user themself (the "User Plaintiffs"): Nicole May; Tyana Daugherty; Solaliz Hernandez; Debra Krystyn; Margret Philie; Vera Figlock; Jehan Ziboukh; and Noah Kupper ("Adult User Plaintiffs"); as well as Plaintiffs I.E. (of California); J.P. (of Illinois); J.P. (of New York); and A.H. (of Virginia) ("Minor User Plaintiffs").

9. In order for each User Plaintiff to create a Temu account through the App, they would have had to assent to the Terms by clicking on one of the Continue buttons on the Registration Prompt, as described below. They could not have created a Temu account without completing this registration process.

## II. Temu Records Confirm That Each Adult User Plaintiff Accepted Temu's Terms

10. In my position, I am familiar with and have access to Temu databases of account records. These records are automatically generated by various types of user activity as part of Temu's standard business operations, and they are kept in the course of Temu's regularly conducted business activity.

11. Among other records of user activity, Temu maintains records of when a user first registered their account, how they chose to register (e.g., through their phone number or email, or through a preexisting Facebook, Google, Apple, or Twitter/X account), the number of subsequent logins associated with that account, and the purchase history of the account.

12. I understand that Plaintiffs' counsel has provided the email addresses of the Adult User Plaintiffs named in the Second Amended Complaint, including Jehan Ziboukh; Margret Philie; Vera Figlock; Nicole May; Tyana Daugherty; Solaliz Hernandez; Debra Krystyn; and Noah Kupper. I queried Temu's records for information related to these email addresses, and was able to identify account records for each of these Adult User Plaintiffs.

13. As discussed below, Temu's records show that each of the Adult User Plaintiffs went through the account registration process described above (¶¶ 5-6), thereby assenting to Temu's Terms.

**A. Plaintiff Jehan Ziboukh**

14. Based on the email address Plaintiffs' counsel provided for Jehan Ziboukh's Temu account and information in the Second Amended Complaint, I have identified two Temu accounts belonging to Jehan Ziboukh.

15. According to Temu's records, the first account was created on November 9, 2022, via the Temu App. To create the account, Ziboukh clicked the "Continue with Apple" button on the Registration Prompt, thereby accepting the Terms.

16. I identified three subsequent logins associated with this account, which means Ziboukh was again shown and proceeded to log in through the Registration Prompt, which stated that by continuing, Ziboukh was agreeing to the Terms.

17. According to Temu's records, the second account was created on September 30, 2023, via the Temu App. To create the account, Ziboukh clicked the "Continue with Google" button on the Registration Prompt, thereby accepting the Terms.

18. I identified five subsequent logins associated with this account, which means Ziboukh was again shown and proceeded to log in through the Registration Prompt, which stated that by continuing, Ziboukh was agreeing to the Terms.

19. Records show that Ziboukh has continued to access the Temu account, including as recently as October 27, 2024.

**B. Plaintiff Margret Philie**

20. Based on the email address Plaintiffs' counsel provided for Margret Philie's Temu account and information in the Second Amended Complaint, I have identified a Temu account belonging to Margret Philie.

21. According to Temu's records, the account was created on June 14, 2023, via the Temu App. To create the account, Philie clicked the "Continue with Apple" button on the Registration Prompt, thereby accepting the Terms.

22. I identified one subsequent login associated with this account, which means Philie was shown and proceeded to log in through the Registration Prompt twice in total, which stated that by continuing, Philie was agreeing to the Terms.

23. Records show that Philie has continued to access the Temu account, including as recently as January 22, 2024.

**C. Plaintiff Vera Figlock**

24. Based on the email address Plaintiffs' counsel provided for Vera Figlock's Temu account and information in the Second Amended Complaint, I have identified a Temu account belonging to Vera Figlock.

25. According to Temu's records, the account was created on October 15, 2023, via the Temu App. To create the account, Figlock clicked the "Continue with Facebook" button on the Registration Prompt, thereby accepting the Terms.

26. Records show that Figlock has continued to access the Temu account, including as recently as October 21, 2024.

**D. Plaintiff Nicole May**

27. Based on the email address Plaintiffs' counsel provided for Nicole May's Temu account and information in the Second Amended Complaint, I have identified a Temu account belonging to Nicole May.

28. According to Temu's records, the account was created on April 26, 2023, via the Temu App. To create the account, May entered her mobile number and clicked the "Continue" button on the Registration Prompt, thereby accepting the Terms.

29. Records show that May has continued to access the Temu account, including as recently as October 28, 2024.

**E. Plaintiff Tyana Daugherty**

30. Based on the email address Plaintiffs' counsel provided for Tyana Daugherty's Temu account and information in the Second Amended Complaint, I have identified two Temu accounts belonging to Tyana Daugherty.

31. According to Temu's records, the first account was created on March 17, 2023, via the Temu App. To create the account, Daugherty clicked the "Continue" button on the Registration Prompt, thereby accepting the Terms.

32. I identified two subsequent logins associated with this account, which means Daugherty was again shown and proceeded to log in through the Registration Prompt, which stated that by continuing, Daugherty was agreeing to the Terms.

33. According to Temu's records, the second account was created on September 11, 2023, via the Temu App. To create the account, Daugherty clicked the "Continue with Google" button on the Registration Prompt, thereby accepting the Terms.

34. I identified three subsequent logins associated with this second account, which means Daugherty was again shown and proceeded to log in through the Registration Prompt, which stated that by continuing, Daugherty was agreeing to the Terms.

35. Records show that Daugherty has continued to access the Temu account, including as recently as March 3, 2024.

**F. Plaintiff Solaliz Hernandez**

36. Based on the email address Plaintiffs' counsel provided for Solaliz Hernandez's Temu account and information in the Second Amended Complaint, I have identified a Temu account belonging to Solaliz Hernandez.

37. According to Temu's records, the account was created on July 2, 2023, via the Temu App. To create the account, Hernandez entered her email address and clicked the "Continue" button on the Registration Prompt, thereby accepting the Terms.

38. Records show that Hernandez has continued to access the Temu account, including as recently as May 18, 2024.

**G. Plaintiff Debra Krystyn**

39. Based on the email address Plaintiffs' counsel provided for Debra Krystyn's Temu account and information in the Second Amended Complaint, I have identified a Temu account belonging to Debra Krystyn.

40. According to Temu's records, the account was created on March 13, 2023, via the Temu App. To create the account, Krystyn clicked the "Continue with Facebook" button on the Registration Prompt, thereby accepting the Terms.

41. I identified two subsequent logins associated with this account, which means that Krystyn was again shown and proceeded to log in through the Registration Prompt, which stated that by continuing, Krystyn was agreeing to the Terms.

42. Records show that Krystyn has continued to access the Temu account, including as recently as January 29, 2024.

**H. Plaintiff Noah Kupper**

43. Based on the email address Plaintiffs' counsel provided for Noah Kupper's Temu account and information in the Second Amended Complaint, I have identified a Temu account belonging to Noah Kupper.

44. According to Temu's records, the account was created on February 19, 2023, via the Temu App. To create the account, Kupper clicked the "Continue with Apple" button on the Registration Prompt, thereby accepting the Terms.

45. Records show that Kupper has continued to access the Temu account, including as recently as July 22, 2023.

## III. Temu's Records Indicate That the Minor User Plaintiffs and/or Their Guardians Accepted the Terms

46. I understand that Plaintiffs' counsel has declined to provide email addresses and/or phone numbers associated with Temu accounts created and/or used by the Minor User Plaintiffs, so that—as was done with the Adult User Plaintiffs—Temu could query its records for account records associated with the Minor User Plaintiffs.

47. I understand that, on November 1, 2024, Plaintiffs' counsel provided the first and last names for each of the Minor User Plaintiffs, but refused to provide their email addresses and/or phone numbers—without which, I cannot definitively confirm their account records.

48. Having received first and last names only, and no potential account identifiers for the Minor User Plaintiffs, I conducted a reasonable search of Temu's records using the minimal information provided in the Second Amended Complaint itself, which included each Minor User Plaintiff's initials, guardian's name, city, and state of residence. I was able to locate the following information about the accounts that appear to belong to the Minor User Plaintiffs and/or their guardians, although I am unable to definitively confirm without additional information from Plaintiffs.

### A. Plaintiff J.P. (of New York)

49. The Second Amended Complaint alleges that J.P. "is a resident of Yonkers, New York," and that his "legal guardian, Gissell Fernandez [] is also a resident of Yonkers, New York." Second Amended Complaint ¶ 27. I identified a Temu account belonging to an individual named Gissell Fernandez with an address in Yonkers, New York, as well as a separate Temu account belonging to an individual with the initials "J.P." that uses the same address in Yonkers, New York and same phone number as Gissell Fernandez. I understand that, on November 1, 2024, Plaintiffs'

counsel provided the first and last name for J.P., and that information matches the aforementioned account information I located for J.P.

50. According to Temu's records, the account was created on February 13, 2023, via the Temu App. To create the account, J.P. clicked the "Continue with Google" button on the Registration Prompt, thereby accepting the Terms.

51. I identified two subsequent logins from this account, which means that J.P. was again shown and proceeded to log in through the Registration Prompt, which stated that by continuing, J.P. was agreeing to the Terms.

52. Records show that J.P. has continued to access the Temu account, including as recently as April 28, 2024.

**B. Plaintiff I.E. (of California)**

53. The Second Amended Complaint alleges that I.E. "is a resident of Los Angeles, California," and that "his mother and legal guardian, Jamilah Crane [] is also a resident of Los Angeles, California." Second Amended Complaint ¶ 18. I identified a Temu account belonging to an individual named Jamilah Crane with an address in Los Angeles, California.

54. According to Temu's records, the account was created on March 21, 2024, via the Temu App. To create the account, Crane clicked the "Continue" button on the Registration Prompt, thereby accepting the Terms.

**C. Plaintiff J.P. (of Illinois)**

55. The Second Amended Complaint alleges that J.P. "is a resident of Pekin, Illinois," and that "his father and legal guardian, Bryan Massey [] is also a resident of Pekin, Illinois." Second Amended Complaint ¶ 21. I identified two Temu accounts belonging to an individual named Bryan Massey with an address in Pekin, Illinois.

56. According to Temu's records, the first account was created on April 9, 2023, via the Temu App. To create the first account, Massey clicked the "Continue with Apple" button on the Registration Prompt, thereby accepting the Terms.

57. According to Temu's records, the second account was created on October 24, 2023, via the Temu App. To create the second account, Massey clicked the "Continue with Google" button on the Registration Prompt, thereby accepting the Terms.

58. I identified one subsequent login associated with the second account above, which means that Massey was again shown and proceeded to log in through the Registration Prompt, which stated that by continuing, Massey was agreeing to the Terms.

59. Records show that Massey has continued to access the Temu account, including as recently as December 17, 2023.

60. I understand that, on November 1, 2024, Plaintiffs' counsel provided the first and last name for J.P., through which I located an account matching that name in the city of Pekin, Illinois. I understand that Plaintiffs' counsel refused to provide an email address or phone number for J.P. Without that information, I am unable to definitively confirm their account records.

**D. Plaintiff A.H. (of Virginia)**

61. The Second Amended Complaint alleges that A.H. "is a resident of Evington, Virginia," and that "her legal guardian, Tracey Johnson [] is also a resident of Evington, Virginia." Second Amended Complaint ¶ 30. I identified a Temu account belonging to an individual named Tracey Johnson with an address in Evington, Virginia.

62. According to Temu's records, the account was created on October 18, 2022, via the Temu Website. To create the account, Johnson clicked the "Continue" button on the Registration Prompt, thereby accepting the Terms.

63. I identified two subsequent logins associated with this account, which means that Johnson was again shown and proceeded to log in through the Registration Prompt, which stated that by continuing, Johnson was agreeing to the Terms.

64. Records show that Johnson has continued to access the Temu account, including as recently as September 18, 2024.

## IV. Temu Records Confirm That At Least Three of the Five Alleged Non-User Plaintiffs Accepted the Terms

65. I understand that Plaintiffs' counsel has provided the email addresses and phone numbers of the five Plaintiffs in the Second Amended Complaint who allegedly are not Temu Users themselves ("Non-User Plaintiffs"): Cynthia Rodriguez; Miguel Acosta; Vinson Mangos; Christian Vega; and Olaya Bourakkadi Amrani. I queried Temu's records for information related to these email addresses and phone numbers, and was able to identify account records for three of the five Non-User Plaintiffs: Miguel Acosta; Vinson Mangos; and Christian Vega.

### A. Plaintiff Miguel Acosta

66. Based on the email address and phone number Plaintiffs' counsel provided for Miguel Acosta's Temu account, I have identified a Temu account belonging to Miguel Acosta.

67. According to Temu's records, the account was created on May 17, 2023, via the Temu Website. To create the account, Acosta entered his email address and clicked the "Continue" button on the Registration Prompt, thereby accepting the Terms.

68. Records show that Acosta has continued to access the Temu account, including as recently as July 24, 2023.

**B. Plaintiff Vinson Mangos**

69. Based on the email address and phone number Plaintiffs' counsel provided for Vinson Mangos' Temu account, I have identified three Temu accounts belonging to Vinson Mangos.

70. According to Temu's records, Mangos' first account was created on March 7, 2023, via the Temu App. To create the account, Mangos clicked the "Continue with Facebook" button on the Registration Prompt, thereby accepting the Terms.

71. Mangos' second account was created on May 16, 2023, via the Temu App. To create the account, Mangos clicked the "Continue with Google" button on the Registration Prompt, thereby accepting the Terms.

72. Mangos' third account was created on March 24, 2024, via the Temu App. To create the account, Mangos entered his email address and clicked the "Continue" button on the Registration Prompt, thereby accepting the Terms.

73. I identified thirteen subsequent logins from these three accounts combined, which means that Mangos was shown and proceeded to log in through the Registration Prompt sixteen times in total, which stated that by continuing, Mangos was agreeing to the Terms.

74. Records show that Mangos has continued to access the Temu accounts, including as recently as October 29, 2024.

**C. Plaintiff Christian Vega**

75. Based on the email address and phone number Plaintiffs' counsel provided for Christian Vega's Temu account, I have identified a Temu account belonging to Christian Vega.

76. According to Temu's records, the account was created on May 28, 2023, via the Temu App. To create the account, Vega clicked the "Continue with Google" button on the Registration Prompt, thereby accepting the Terms.

77. Records show that Vega has continued to access the Temu account, including as recently as June 29, 2023.

## V. The Current Terms, Like All Versions of the Terms in Effect During the Relevant Timeframe, Contain an Arbitration Provision

76. Throughout the time period relevant here (including all of the times on which Plaintiffs created their accounts or logged back into the Temu App), the Terms contained a provision advising users in capital letters that "THESE TERMS ARE SUBJECT TO CHANGE BY [TEMU] IN OUR SOLE DISCRETION AT ANY TIME," and stating that Temu would publish a copy of such updated Terms on its website and "update the 'Last Updated' date at the top of the Terms." Ex. B § 1.6. The Terms further stated that any such amended Terms would be enforceable to any existing account holder within thirty days after posting.

77. Attached as Exhibit B is the most recently updated version of the Terms posted more than thirty days prior to the date of this declaration, which were posted specifically on June 6, 2024. The Terms contain an arbitration provision as described in the Motion. All versions of the Terms in effect throughout the November 2022-November 2023 time period relevant here likewise contained an arbitration provision with the terms described in the Motion.

78. I declare under the penalty of perjury, that the foregoing is true and correct, and that I executed this Declaration on November 4, 2024 in Boston, Massachusetts.

(*signature on following page*)

Michael Trinh