**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEHAN ZIBOUKH, MARGRET PHILIE, VERA FIGLOCK, NICOLE MAY, TYANA DAUGHTERY, SOLALIZ HERNANDEZ, DEBRA KRYSTYN, I.E., A MINOR, CYNTHIA RODRIGUEZ, J.P., A MINOR, MIGUEL ACOSTA, VINSON MANGOS, NOAH KUPPER, J.P., A MINOR CHRISTIAN VEGA, A.H., A MINOR, AND OLAYA BOURAKKADI AMRANI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WHALECO INC. d/b/a TEMU, and PDD HOLDINGS INC.,<br><br>Defendants. | Case No. 1:24-cv-03733-MKB-RML<br><br>District Judge Margo K. Brodie<br><br>Magistrate Judge Robert M. Levy |

**<u>DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION</u>**

Date: February 18, 2025

Serrin Turner
Matthew Valenti
Hadrian Luo
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: serrin.turner@lw.com
matthew.valenti@lw.com
hadrian.luo@lw.com

# TABLE OF CONTENTS

PRELIMARY STATEMENT ....................1

ARGUMENT ....................1

I. TEMU USERS AGREED TO ARBITRATE THEIR CLAIMS ....................1

A. Temu Users Validly Assented to the Arbitration Agreement ....................1

B. Plaintiffs' Purported Challenges to the Delegation Clause Fail ....................2

1. Plaintiffs Fail to Challenge the Delegation Clause Itself ....................2

2. The Delegation Clause Is Not Unconscionable in Any Event ....................4

a. The Clause Is Not Procedurally Unconscionable ....................4

b. The Clause Is Not Substantively Unconscionable ....................5

C. Plaintiffs' Remaining Enforceability Arguments Are Delegated to the Arbitrator and Fail Regardless ....................10

II. MINOR USERS CANNOT AVOID THE ARBITRATION AGREEMENT ....................12

A. Minor Users Who Created a Temu Account Agreed to Arbitrate ....................12

C. The Minor Users Are Precluded from Disaffirming the Terms ....................14

D. The Minor Users Are Bound Even If They Used Somone Else's Account ....................16

III. PDD HOLDINGS CAN ENFORCE THE ARBITRATION AGREEMENT ....................17

IV. PLAINTIFFS ARE NOT ENTITLED TO DISCOVERY ....................20

CONCLUSION ....................20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.D. v. Credit One Bank, N.A.*,
885 F.3d 1054 (7th Cir. 2018) ....................13, 15

*Ahmed v. Citibank, N.A.*,
2020 WL 2988666 (E.D.N.Y. 2020)....................11

*Am. Exp. Co. v. Italian Colors Rest*.,
570 U.S. 228 (2013)....................11

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................7

*Atencio v. Bird Rides Inc*.,
2023 WL 8168955 (C.D. Cal. 2023)....................17

*Attix v. Carrington Mortg. Servs, LLC*,
35 F.4th 1284 (11th Cir. 2022) ....................3

*B.F. by & through Fields v. Amazon*,
2019 WL 9364164 (W.D. Wash. 2019)....................17

*B.F. v. Amazon.com Inc*,
858 F. App'x 218 (9th Cir. 2021) ....................16, 17

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
2017 WL 7309893 (S.D.N.Y. 2017)....................5

*Bielski v. Coinbase, Inc*.,
87 F.4th 1003 (9th Cir. 2023) ....................6

*Billboard Media, LLC v. Wray*,
2024 WL 2941270 (S.D.N.Y. 2024)....................3

*Bimota SPA v. Rousseau*,
628 F. Supp. 2d 500 (S.D.N.Y. 2009)....................19

*Blanton v. Domino's Pizza Franchising LLC*,
962 F.3d 842 (6th Cir. 2020) ....................18

*Carroll v. Leboeuf, Lamb, Greene & MacCrae, LLP.*,
374 F.Supp. 2d 375 (S.D.N.Y. 2005)....................19

*CBS, Inc. (CBS Recs. Div.) v. Tucker*,
412 F. Supp. 1222 (S.D.N.Y. 1976)....................15

*Chan v. Charter Commc'ns Holding Co.*,
2015 WL 12655701 (C.D. Cal. 2015)....................16

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006)....................14

*Contec Corp. v. Remote Sol., Co.*,
398 F.3d 205 (2d Cir. 2005)....................17

*Courtwright v. Epic Games, Inc.*,
No. 2:24-cv-04055-BCW (W.D. Mo. Feb. 13, 2025)....................13

*Davenport v. Nvidia Corp.*,
2024 WL 832387 (N.D. Cal. 2024)....................6

*Desarrolladora La Ribera v. Anderson*,
2024 WL 5186600 (S.D.N.Y. 2024)....................18, 19

*Devlin v. Transportation Communs. Int'l Union*,
175 F.3d 121 (2d Cir. 2009)....................7

*Difrancesco v. Win-Sum Ski Corporation*,
2017 WL 1046741 (W.D.N.Y. 2017)....................16

*Doe v. Roblox Corp.*,
602 F. Supp. 3d 1243 (N.D. Cal. 2022)....................12

*Doe v. Trump Corp.*,
6 F.4th 400 (2d Cir. 2021)....................19, 20

*Doffing v. Meta Platforms*,
2022 WL 3357698 (D. Or. 2022)....................12

*Faith v. Khosrowshahi*,
2023 WL 5278126 (E.D.N.Y. 2023)....................3, 5

*Farrell v. Subway Int'l, B.V.*,
2011 WL 1085017 (S.D.N.Y. 2011)....................8

*Gostev v. Skillz Platform, Inc.*,
88 Cal. App. 5th 1035 (2023)....................8

*Green Tree Fin. Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000)....................10

*Heckman v. Live Nation Ent., Inc.*,
120 F.4th 670 (9th Cir. 2024) ....................3, 5, 10

*Heckman v. Live Nation Ent., Inc.*,
686 F. Supp. 3d 939 (C.D. Cal. 2023) ....................8

*Herrera v. Katz Commc'ns, Inc.*,
532 F. Supp. 2d 644 (S.D.N.Y. 2008)....................10

*Hodges v. Comcast Cable Commc'ns, LLC*,
21 F.4th 535 (9th Cir. 2021) ....................9

*Holley-Gallegly v. TA Operating, LLC*,
74 F.4th 997 (9th Cir. 2023) ....................3

*Hu, et al. v. Whaleco, Inc. et al*.,
No. 23-cv-06962, ECF No. 54 (E.D.N.Y. Oct. 1, 2024) ....................1

*I.C. ex rel. Solovsky v. Delta Galil USA*,
135 F. Supp. 3d 196 (S.D.N.Y. 2015)....................12, 14, 15

*In re SSL Int'l, PLC*,
843 N.Y.S.2d 264 (1st Dep't, 2007) ....................17

*In re StockX Customer Data Sec. Breach Litig.*,
19 F.4th 873 (6th Cir. 2021) ....................3, 14

*Ingle v. Cir. City Stores, Inc.*,
328 F.3d 1165 (9th Cir. 2003) ....................7

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ....................11

*K.F.C. v. Snap*,
29 F.4th 835 (7th Cir. 2022) ....................13

*Kohler v. Whaleco, Inc.*,
2024 WL 4887538 (S.D. Cal. 2024)....................2, 4, 7

*Ligeri v. Amazon.com Inc.*,
2024 WL 3638241 (D. Conn. 2024)....................14, 15

*Lin v. DISH Network*,
2020 WL 13845109 (E.D.N.Y. 2020)....................3

*McGrath v. DoorDash, Inc.*,
2020 WL 6526129 (N.D. Cal. 2020) ....................9

*Meyer v. T-Mobile USA Inc.*,
836 F. Supp. 2d 994 (N.D. Cal. 2011) ....................................................................7

*Nayal v. HIP Network Servs. IPA, Inc.*,
620 F. Supp. 2d 566 (S.D.N.Y. 2009)....................................................................5, 9

*Nicosia v. Amazon.com, Inc.*,
384 F. Supp. 3d 254 (E.D.N.Y. 2019), *aff'd*, 815 F. App'x 612 (2d Cir. 2020)......................16

*Oestreicher* v. *Equifax Info. Servs., LLC*,
2024 WL 1199902 (E.D.N.Y. 2024)....................................................................5

*Ostrolenk Faber LLP v. Lagassey*,
2020 WL 30350 (S.D.N.Y. 2020)....................................................................19

*Palma v. Hat World, Inc.*,
2024 WL 660242 (C.D. Cal. 2024)....................................................................15, 16

*Ragone v. Atl. Video at Manhattan Center*,
2008 WL 4058480 (S.D.N.Y. 2008), *aff'd*, 595 F.3d 115 (2d Cir. 2010) ..............................18

*Reid v. Tandym Grp., LLC*,
697 F. Supp. 3d 62 (S.D.N.Y. 2023)....................................................................19

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010)....................................................................3

*Robinson Brog Leinwand Greene Genovese & Gluck P.C. v. John M. O'Quinn & Assocs., L.L.P.*,
523 F. App'x 761 (2d Cir. 2013) ....................................................................11

*S.T.G. by & through Garcia v. Epic Games, Inc.*,
2024 WL 4375782 (S.D. Cal. 2024) ....................................................................13

*Scott Eden Mgmt. v. Kavovit*,
563 N.Y.S.2d 1001 (N.Y. Sup. Ct. 1990) ....................................................................14

*Spahr v. Secco*,
330 F.3d 1266 (10th Cir. 2003) ....................................................................13

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*,
120 F.4th 59 (2d Cir. 2024) ....................................................................11

*T.K. v. Adobe Sys. Inc.*,
2018 WL 1812200 (S.D. Cal. 2024) ....................................................................14

*Tercero v. Sacramento Logistics LLC*,
2025 WL 43125 (E.D. Cal. 2025)....................................................................6

*Wexler v. AT & T Corp.*,
211 F. Supp. 3d 500 (E.D.N.Y. 2016) ....................11

*Yeh v. Tesla, Inc.*,
2023 WL 6795414 (N.D. Cal. 2023) ....................14, 15

*Yost v. Everyrealm, Inc.*,
2023 WL 2859160 (S.D.N.Y. 2023)....................11

**STATUTES**

Cal. Fam. Code § 6700 ....................12

## PRELIMARY STATEMENT

As the Court held in the *Hu* case, Temu users validly assented to the arbitration agreement in Temu's Terms, and any challenges regarding the agreement's enforceability are delegated to the arbitrator. Plaintiffs attempt to circumvent *Hu* by simply repackaging the enforceability challenges they made there as challenges to the delegation clause. This does not suffice to challenge a delegation provision. All of Plaintiffs' arguments are about the enforceability of the agreement as a whole and are for the arbitrator to decide—and in any event they are meritless.

Nor can the Minor Users escape the delegation clause. Contracts with minors are merely *voidable* in certain circumstances—they are not invalid *ab initio*—and voidability is an issue of *enforceability* that is for the arbitrator to address. Likewise, any Minor Users who used someone else's account knowingly took advantage of the Terms and, as a result, are bound to the Terms and estopped from evading arbitration.

Finally, Plaintiffs' arguments against PDD Holdings' enforcement of the arbitration agreement rest on confusion about the applicable case law. The law is clear that where a complaint treats one defendant interchangeably with the other—as Plaintiffs treat PDD Holdings and Temu here—both defendants may avail themselves of the applicable arbitration agreement.

## ARGUMENT

### I. TEMU USERS AGREED TO ARBITRATE THEIR CLAIMS

#### A. Temu Users Validly Assented to the Arbitration Agreement

After evaluating the same Registration Prompt at issue here, the Court held in *Hu* that Temu users validly agree to the Terms when they create an account and thereby agree to arbitrate their disputes with Temu. MTC 9-10; *Hu* Order at 38.[1] The Court also held that any challenges to the

---

[1] Citations to the "*Hu* Order" refer to the Memorandum & Order in *Hu, et al. v. Whaleco, Inc. et al.*, No. 23-cv-06962, ECF No. 54 (E.D.N.Y. Oct. 1, 2024).

enforceability of the agreement are unambiguously delegated to the arbitrator (subject to specific exceptions not implicated here). *Hu* Order 41.

Plaintiffs nonetheless recycle the same arguments they extensively briefed as *amici* in *Hu*—which the Court already rejected. *See* Appendix A (comparing Plaintiffs' arguments here with the arguments the Court rejected in *Hu*). Plaintiffs provide no basis for the Court to reach a different conclusion now. MTC Opp. 12-15. In fact, since the Court's ruling in *Hu*, another federal court reached a similar holding and compelled arbitration under Temu's terms—a development Plaintiffs bury in a footnote (MTC Opp. 9 n.8). *See Kohler v. Whaleco, Inc*., 2024 WL 4887538 (S.D. Cal. 2024). Thus, if anything, the legal support for Defendants' position has only grown since Plaintiffs last pitched their arguments, and the Court should similarly reject them now.

**B. Plaintiffs' Purported Challenges to the Delegation Clause Fail**

In an attempt to avoid the *Hu* Order, Plaintiffs simply relabel most of their enforceability challenges as challenges to the delegation clause itself. That does not suffice. The challenges are still about the enforceability of the agreement as a whole and are therefore delegated to the arbitrator—and they all fail on the merits in any event. Plaintiffs do not even bother to frame the remainder of their arguments as challenges to the delegation clause in the first place and thus, even on their face, those arguments are plainly delegated to the arbitrator (and, again, fail regardless).

**1. Plaintiffs Fail to Challenge the Delegation Clause Itself**

In *Hu*, the Court held that the Terms generally delegate enforceability challenges to the arbitrator. *Hu* Order 41-43. While Plaintiffs (as *amici*) "challenge[d] various aspects of the arbitration agreement" as unconscionable, "they d[id] not specifically challenge the delegation clause," and therefore "the Court … treat[ed] [it] as valid and enforceable." *Id.* 43-44. Plaintiffs now simply attempt to portray these same challenges as challenges to the delegation provision—without providing a satisfactory explanation of how that is so. MTC Opp. 4-10.

Plaintiffs argue that parties can challenge the "enforceability of a delegation clause by explaining how 'unrelated' provisions make the delegation unconscionable." *Id*. 3 (*quoting Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 680-81 (9th Cir. 2024)). What Plaintiffs are missing is that they must—as *Heckman* also states—explain how challenging "provisions outside of the delegation clause" makes "*the fact of an arbitrator deciding arbitrability* unconscionable." *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1002 (9th Cir. 2023); *Heckman*, 120 F.4th 670 at 680.[2] Plaintiffs do not meet this standard—or even try to do so.

For example, Plaintiffs purport to challenge the delegation provision by (incorrectly) claiming that the agreement prohibits public injunctive relief. MTC 9. But this challenge is not directed at the delegation clause specifically, nor do Plaintiffs explain why the arbitrator could not resolve this dispute. The same goes for their other unconscionability challenges. *See In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 886 (6th Cir. 2021) (rejecting challenge to delegation clause where plaintiffs "recycled the same arguments that pertain to the enforceability of the agreement as a whole"); *Billboard Media, LLC v. Wray*, 2024 WL 2941270, at *8 (S.D.N.Y. 2024) ("[A]lthough [plaintiff] couche[d] these arguments as supporting her assertion that the Delegation Clause itself is unconscionable, none [were] directed at the Delegation Clause specifically.").[3] Because Plaintiffs do not genuinely challenge the delegation clause, "the Court

---

[2] *See also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 74 (2010) (explaining that plaintiff's challenge to agreement's discovery procedures failed to properly challenge delegation provision because he did not explain how "the limitation upon the number of depositions *causes the arbitration of his claim* … to be unconscionable") (emphasis added); *Attix v. Carrington Mortg. Servs, LLC*, 35 F.4th 1284, 1304 (11th Cir. 2022) (holding that a court can only decide delegation issues "if, and only if, the substantive nature of the party's challenge meaningfully goes to the parties' precise agreement to delegate threshold arbitrability issues").

[3] *See also Faith v. Khosrowshahi*, 2023 WL 5278126, at *7 (E.D.N.Y. 2023) (rejecting delegation clause challenge where "Plaintiff challenges the [agreement] as a whole, and not the delegation clause of the arbitration provision alone"); *see also Lin v. DISH Network*, 2020 WL 13845109, at *5 (E.D.N.Y. 2020) ("The plaintiff's further speculation that the arbitrator might not be impartial does not provide a basis for finding that the delegation provision is substantively unconscionable.").

must treat it as valid." *Hu* Order 41; *see also Kohler*, 2024 WL 4887538, at *11 (rejecting similar arguments because they were not "directed specifically to the validity of the delegation clause").

### 2. The Delegation Clause Is Not Unconscionable in Any Event

Even if the Court were to consider Plaintiffs' unconscionability challenges that they style as challenges to the delegation clause, these arguments all fail on the merits.

#### a. The Clause Is Not Procedurally Unconscionable

Plaintiffs argue that the delegation clause is procedurally unconscionable for two reasons, straining to analogize this case to the facts of *Heckman*—even though this Court already rejected the comparison, as did the federal court in *Kohler*.[4]

First, while asserting that the Terms are "riddled with [] inconsistencies," Plaintiffs cite just one purported example—that the Terms require batch arbitration while also prohibiting "mass" or "class" actions. MTC Opp. 4-5. There is nothing inconsistent about those provisions; the Terms simply impose a general prohibition on parties seeking relief "on a class, collective, representative, or mass action basis," while also providing, as an *exception* to that general rule, that similar individual arbitration demands brought by the same counsel are to be administered in batches. *See* Terms § 19.9 (batching provision); § 19.4 (agreeing to waive any right to proceed collectively or to consolidate individual cases, "EXCEPT AS SPECIFIED IN SECTION 19.9"). In any event, nothing about these two provisions somehow makes the delegation clause unfair. *See Kohler*, 2024 WL 4887538, at *8 ("Plaintiff does not satisfy her burden of explaining how the Class Action Waiver and Batch Arbitration Provision make the fact of an arbitrator deciding arbitrability unconscionable."); *see also Hu* Order 37 (rejecting argument that the supposed

[4] As the Court recognized, *Heckman* "is so distinguishable from this one, from the requirements here. And the issues that the courts identified in those cases are not present in this arbitration agreement." Turner Decl., Ex. 1 (Pre-Motion Conf. Tr.) at 6-7; *Kohler*, 2024 WL 4887538, at *8 ("This case differs from *Heckman*[.]").

"inconsistency" of the Terms prevents formation of a valid agreement).

Second, Plaintiffs complain that, "[a]s in *Heckman*," Temu "gave themselves the unilateral right to amend" the Terms. MTC Opp. 5. But unlike in *Heckman*, no amendments were applied retroactively to this litigation, and even if the Terms were updated, Plaintiffs could opt out of any updated agreement within 30 days, *see* Terms § 19.10, a critical element lacking in *Heckman*. *See Heckman*, 120 F.4th at 684; *see also Khosrowshahi*, 2023 WL 5278126, at *8 ("The ability to opt out of an arbitration provision is often a dispositive factor in rejecting procedural unconscionability challenges."). Notably, when Plaintiffs created their accounts, all the disputed provisions were already included in the Terms, and there have been no material changes to these provisions during litigation. *See* Trinh Decl. ¶¶ 15, 21, 25, 28, 31, 37, 40, 44.[5]

**b. The Clause Is Not Substantively Unconscionable**

Plaintiffs raise the same scattershot set of substantive unconscionability challenges as they did in *Hu*. *Compare* Evans Decl., Ex. C (at ECF No. 45, pp. 21-25), *with* MTC Opp. 6-10. Even if these challenges were directed to the delegation clause (and they are not), they fail to establish any substantive unconscionability—let alone to the degree required given the absence of any procedural unconscionability. *See Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) ("Under New York law, … [t]here must be a showing that such a contract is both procedurally and substantively unconscionable."); *see also Oestreicher v. Equifax Info. Servs., LLC*, 2024 WL 1199902, at *6 (E.D.N.Y. 2024) (evaluating "procedural and substantive unconscionability on a 'sliding scale'").

[5] Plaintiffs' only other procedural unconscionability argument—that the Terms are unfair because they require users to "follow a hyperlink to the Terms … [and] yet another link to the AAA's website" (MTC Opp. 4-5)—is absurd. *See Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *11 (S.D.N.Y. 2017) ("[T]he Second Circuit's decision in *Meyer* forecloses a finding that a hyperlink to the TOU is procedurally unconscionable" and "it is common for arbitration agreements to include reference to AAA procedures or other procedures that will govern any potential dispute.").

**Informal Dispute Resolution Requirement.** Plaintiffs challenge the Terms' informal dispute resolution ("IDR") process, which simply requires that the complaining party have a brief phone or video meeting with the other party before filing an arbitration demand. *See* Terms § 19.2. At the pre-motion conference, the Court noted that requiring such a meeting "is a tried and true practice" and did not "find … it to be problematic." Turner Decl., Ex. 1 (Pre-Motion Conf. Tr.) at 27:19-24. Indeed, courts routinely enforce similar requirements. *See, e.g.*, *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1014 (9th Cir. 2023) (enforcing Coinbase's provision because "[p]re-arbitration dispute resolution procedures are commonplace and can be both 'reasonable and laudable'"); *Davenport v. Nvidia Corp.*, 2024 WL 832387, at *6 (N.D. Cal. 2024) (enforcing similar requirement). Contrary to what Plaintiffs contend, *see* MTC Opp. 6, the IDR provision is not one-sided. Defendants are required to participate in the conference just as much as Plaintiffs. Terms § 19.2. Nor does the provision "bottleneck" claims merely because it requires individual conferences even where the same law firm represents multiple claimants. *See* MTC Opp. 6. While the *law firm* may find it inconvenient to attend multiple IDR conferences, the burden the IDR requirement imposes on any individual *claimant* remains minimal. That is all that matters.

**Arbitration Demand.** Plaintiffs argue that it is unconscionable for the Terms to require the arbitration demand to include basic information about the claim—*e.g.*, "a statement of the legal claims being asserted and the factual bases for them" and "a description of the remedy." MTC Opp. 6-7; Terms § 19.5. This critique is hard to take seriously. Preparing an arbitration demand is certainly no more "onerous" than commencing litigation in court—as evidenced by the 535-paragraph complaint filed here. ECF No. 64. Contrary to Plaintiffs' argument, the requirement applies equally to any arbitration demand brought by Temu. *See Tercero v. Sacramento Logistics LLC*, 2025 WL 43125, at *8 (E.D. Cal. 2025) (no substantive unconscionability where relevant

portion of agreement covered claims by either party). Even if consumers are the party more likely to initiate a dispute, that would be true whether the forum is arbitration or court.[6]

**Batching Clause.** Plaintiffs do not have standing to challenge the batching clause because it does not apply to them.[7] Regardless, their challenge is meritless. Plaintiffs again strain to fit this case into the facts of *Heckman*, *see* MTC Opp. 7-8, but, *Heckman* involved a *bellwether* provision—not a batch arbitration provision. *See Kohler*, 2024 WL 4887538, at *8-9 (distinguishing *Heckman* because "the mass arbitration provisions found to be unconscionable all involved bellwether proceedings, which are not present in Temu's Arbitration Agreement"). Batching similar arbitration demands so that they are decided by the same arbitrator is comparable to grouping related cases before the same judge in court—which, of course, is not unconscionable. *Cf. Devlin v. Transportation Communs. Int'l Union*, 175 F.3d 121, 130 (2d Cir. 2009) (stating that grouping related cases together is an "important tool of judicial administration").

Plaintiffs' remaining arguments about the batching clause are just as meritless. First, Plaintiffs contend that batching forces consumers to arbitrate in an inconvenient forum. MTC Opp. 7; Terms § 19.5. As an initial matter, the "location" of any arbitration proceedings would likely be irrelevant to any batched arbitration because the AAA Mass Arbitration Rules provide that "virtual hearings are the preferred method of evidentiary hearings," *see* Evans Decl., Ex. F (Mass

---

[6] The one case Plaintiffs cite—*Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003))—is both distinguishable and supplanted by the Supreme Court's reasoning in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011) ("When state law prohibits outright the arbitration of a particular type of claim, the conflicting state rule is displaced by the Federal Arbitration Act."). *Ingle* applied California law, was limited to employer-employee arbitration agreements where the agreement only provided for arbitration of an employee's claims, and (impermissibly) restricts arbitration agreements in that context. No similar principle exists for terms of service with consumers.

[7] The batching requirement applies only if "there are twenty-five (25) or more individual Arbitration Notices," Terms § 19.9, which does not apply here because there are fewer than 25 named Plaintiffs. *See Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1003 (N.D. Cal. 2011) (finding that plaintiff lacked standing to challenge provision in arbitration agreement because it had not been applied to her). Plaintiffs respond that these are "class claims" and counsel has been "contacted by thousands of class members." MTC Opp. 10 n.9. That does not matter. No class has been certified—so the only plaintiffs are the named Plaintiffs—and it is irrelevant that Plaintiffs' counsel claims to have been "contacted" by other individuals who may or may not have arbitrable claims against Temu.

Arbitration Supplementary Rules), Rule MA-5. But even if any Plaintiff was required to appear at a hearing in-person, the arbitrator is required to consider convenience for the parties in selecting the location. *Id.*, Rule MA-5 (stating that the arbitrator will consider, among other things "the positions of the parties" and "relative ability of the parties to travel").[8]

Second, Plaintiffs complain that the Terms give the arbitrator "unfettered discretion" over whether to group together similar cases, which "invites the potential for unfairness." MTC Opp. 8. Plaintiffs provide no support for this conclusion but merely cite to the holding in *Heckman*, which is not analogous here. The court in *Heckman* was concerned with an arbitrator's discretion over whether to *apply precedent* from bellwether proceedings to future cases. *See Heckman v. Live Nation Ent., Inc.*, 686 F. Supp. 3d 939, 961 (C.D. Cal. 2023). That concern is inapposite to the Terms, which specifically provide that any decisions made with respect to one batch do *not* have "precedential effect on subsequently administered batches." Terms § 19.9.

Third, Plaintiffs argue that asking the parties to pick an arbitrator presents a barrier to resolution where there are numerous claimants. MTC Opp. 8. However, consumers are only subject to batch arbitration when they are represented by the same law firm, or group of law firms, who can coordinate selection of arbitrators. Plaintiffs also argue that concurrent arbitration of batches does not avoid delay given that there are a limited number of arbitrators, *id.*, but Plaintiffs do not explain how adjudication of thousands of claims *without* batching would be any faster.

Finally, Plaintiffs again rely on *Heckman* to claim that the batch arbitration provision lacks procedural safeguards present in class actions. *Id.* But Plaintiffs are not entitled to class action

[8] Plaintiffs' reliance on *Gostev v. Skillz Platform, Inc*., 88 Cal. App. 5th 1035, 1061 (2023), is misplaced. There, all claimants were required to arbitrate in San Francisco regardless of their residence, and the court evaluated whether that requirement was "unreasonable," rather than *unconscionable*. In any event, the case is wrongly decided, as parties are permitted to contract freely on where an arbitration takes place—even if it turns out to be inconvenient. *See Farrell v. Subway Int'l, B.V.*, 2011 WL 1085017, at *6 (S.D.N.Y. 2011) ("Parties may very well be willing to arbitrate in an inconvenient forum … , and the Court should honor their right to make those practical choices.").

procedures, as they waived their right to participate in a class action and agreed to arbitrate their claims. Terms § 19.4; *see Nayal*, 620 F. Supp. 2d at 573 ("Courts applying New York law … have uniformly held that class action waivers are not unconscionable."). Plaintiffs also ignore that the Terms authorize batching only for administrative purposes, such that an arbitrator can attend to any individual differences between claimants within a batch—which is a *more* individualized process than they would receive in a class action.[9] Again, just as grouping related cases before the same judge is not somehow unfair, neither is batching them before the same arbitrator. *See McGrath v. DoorDash, Inc.*, 2020 WL 6526129, at *10 (N.D. Cal. 2020) ("[T]he terms of the Mass-Claims Protocol appear fair[.]").[10]

**Sanctions.** Plaintiffs argue that the provision in the Terms allowing arbitrators to impose attorneys' fees for frivolous claims is non-mutual. MTC Opp. 9. Plaintiffs again mischaracterize the Terms, which provides for a fee award against *any* party that brings a frivolous claim against the other, and thus applies equally to Temu and consumers alike. Terms § 19.8.

**Public Injunctive Relief.** Plaintiffs argue that the arbitration agreement is unconscionable because it supposedly precludes public injunctive relief. MTC Opp. 9. However, Plaintiffs are not even seeking "public injunctive relief," but rather seek relief for particular classes of Temu users and non-users. *See Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 542 (9th Cir. 2021) (holding that public injunctive relief "seek[s] to prevent future violations of law *for the benefit of the general public as a whole*, as opposed to a particular class of persons") (emphasis added). In

---

[9] *See* Terms § 19.9 ("This Batch Arbitration provision shall in no way be interpreted as authorizing a class, collective and/or mass arbitration or action of any kind, or arbitration involving joint or consolidated claims under any circumstances, except as expressly set forth in this provision."); *see also* Evans Decl., Ex. F (Mass Arbitration Supplementary Rules), at Introduction (stating that, while the parties may agree to "assign multiple case to a single arbitrator," "[e]ach *will still be heard and decided individually by the arbitrator*") (emphasis added).

[10] The Terms also enable consumers to bring individualized claims by proceeding in small-claims court, *see* Terms § 19.1, or opting out of the agreement altogether within 30 days, *see id.* § 19.10.

any event, the agreement allows for individual injunctive relief, and any claims for public injunctive relief can be severed and litigated in court. *See* Terms § 19.4.

### C. Plaintiffs' Remaining Enforceability Arguments Are Delegated to the Arbitrator and Fail Regardless

Plaintiffs scatter additional enforceability arguments throughout the rest of the Opposition that they do not even present as challenges to the delegation provision. These arguments on their face are delegated exclusively to the arbitrator, and fail regardless.

First, Plaintiffs contend that the Federal Arbitration Act ("FAA") "does not authorize 'batch' arbitration." MTC Opp. 10. The cases they cite say nothing of the sort, however, but rather discuss whether state law restricting class arbitration was preempted by the FAA. *See, e.g.*, *Heckman*, 120 F.4th at 692 (concurring opinion, stating that "[s]tate laws that interfere with such agreements—those that lack the fundamental attributes of bilateral arbitration"—are not preempted by the FAA). That has no bearing on this dispute or the Terms.

Second, Plaintiffs claim that the arbitration agreement is unenforceable because it "deprives Plaintiffs of federal remedies," including attorney fees, punitive damages, and public injunctive relief allowed by statute. MTC Opp. 10-11. Not so. The Terms restrict punitive damages only to the extent "permitted by applicable law," Terms § 15.1, and the language that "[t]he parties shall bear their own attorneys' fees and costs" does not prohibit the arbitrator from awarding fees allowed by statute, *see Herrera v. Katz Commc'ns, Inc.*, 532 F. Supp. 2d 644, 647 (S.D.N.Y. 2008) (interpreting similar language and rejecting argument similar to that made by Plaintiffs). And again, Plaintiffs are not even seeking public injunctive relief here. *Supra* at pp. 9-10.

Third, Plaintiffs' argument that batch arbitration is prohibitively expensive, MTC Opp. 11-12, is meritless. As Plaintiffs' own case holds, the party challenging arbitration "bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp.-Alabama v. Randolph*,

531 U.S. 79, 92 (2000). Plaintiffs have not shown that they are likely to face prohibitive costs, in particular because the business bears most costs in consumer arbitration. *See* Evans Decl., Ex. H (AAA Fee Schedule).[11] Contrary to Plaintiffs' contention, MTC Opp. 11, the test is not whether the costs of arbitration exceed *likely damages*, but rather, whether the costs of arbitration "would materially exceed those of a litigation," *Yost v. Everyrealm, Inc.*, 2023 WL 2859160, at *10 (S.D.N.Y. 2023). Plaintiffs cannot demonstrate that here.[12]

Fourth, Plaintiffs argue that the arbitration agreement does not cover their privacy claims. MTC Opp. 17-19. But the Terms broadly cover any claims "relating in any way to your access to or use of [Temu]," Terms § 19.1, which plainly covers Plaintiffs' privacy claims. *See Robinson Brog Leinwand Greene Genovese & Gluck P.C. v. John M. O'Quinn & Assocs., L.L.P.*, 523 F. App'x 761, 764 (2d Cir. 2013) (broad arbitration provisions "encompass[] any disputes that touch matters covered by the contract").[13]

Finally, Plaintiffs try to shoehorn their dispute into one of the few exceptions to the arbitration agreement. MTC Opp. 18-19. But the exceptions they cite are limited to disputes relating to Section 19.4 of the Terms or compliance with the IDR process, neither of which is at

---

[11] Plaintiffs' reliance on *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 91 (2d Cir. 2024) is misguided. There, the Second Circuit made clear that "the fact that it is not worth the expense involved in proving a statutory remedy does not constitute the elimination of the right to pursue that remedy," *id.* at 90 (quoting *Am. Exp. Co. v. Italian Colors Rest*., 570 U.S. 228, 229 (2013)), and enjoined arbitration for the "unusual case" of "frivolous arbitrations" intended to perpetuate the fraud itself. *Id.* at 91.

[12] Plaintiffs cannot show that litigation would be any less expensive where, as here, there is a valid class action waiver, where batch arbitration reduces filing fees for both consumers and businesses, *see* Terms § 19.9, and where they have the option to go to small claims court for claims that qualify.

[13] Plaintiffs' cited cases are inapposite. The arbitration provision in *Jackson* was limited to claims "arising out of … this Agreement," not broadly to access to or use of the defendant's services. *Jackson v. Amazon.com, Inc*., 65 F.4th 1093, 1095 (9th Cir. 2023). The agreement in *Wexler* was found unconscionably broad because it purported to cover "all disputes and claims between us" and "would [thus] obligate them to arbitrate literally every possible dispute he or she might have with the service provider." *Wexler v. AT & T Corp.*, 211 F. Supp. 3d 500, 501, 504 (E.D.N.Y. 2016). Those concerns do not apply here. *Cf. Ahmed v. Citibank, N.A.*, 2020 WL 2988666, at *6 (E.D.N.Y. 2020) ("[T]he arbitration clauses in his agreements are still limited to actions 'arising out of or relating to' the relationship between Citibank and Ahmed. The provisions do not contain the problematic feature present in [] *Wexler*.").

issue here. Any challenge regarding public injunctive relief is addressed above.

## II. MINOR USERS CANNOT AVOID THE ARBITRATION AGREEMENT

The Minor Users' arguments all fail because they either created accounts and accepted the Terms or, if they used another's account, stepped into the shoes of the accountholder and are bound by the Terms as a result. MTC 10-17. To the extent they wish to raise any age-related defense to the *enforcement* of the arbitration agreement, the arbitrator must resolve that issue.

### A. Minor Users Who Created a Temu Account Agreed to Arbitrate

Plaintiffs wrongly assert that the Minor Users cannot be considered to have accepted the arbitration agreement due to their age. MTC Opp. 20-21. The law is clear that minors are capable of entering into contracts just as adults are, and any age-related defense is limited to the right to disaffirm the contract in certain circumstances—not to claim that no contract exists. *See* MTC 10-12; *I.C. ex rel. Solovsky v. Delta Galil USA*, 135 F. Supp. 3d 196, 208 (S.D.N.Y. 2015) ("[T]he protection New York law provides to minors is to allow them the right to disaffirm a contract … not to find that no enforceable contract exists."). Plaintiffs cite a California case, *Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243, 1256-57 (N.D. Cal. 2022), but nothing in New York law supports the proposition that age alone invalidates a contract. *Solovsky*, 135 F. Supp. 3d at 208 ("Plaintiff cannot claim lack of mutual assent on the basis of her age alone."). Indeed, *Doe* appears to be inconsistent even with California law—which makes clear that "a minor may make a contract in the same manner as an adult, subject to the power of disaffirmance." Cal. Fam. Code § 6700.[14]

Plaintiffs next argue that "[t]he delegation clause … is [] unconscionable as applied to minor users" because the arbitration agreement "expressly stat[es] [it] do[es] not apply to minors."

[14] Plaintiffs cite another case where they say the court "denied arbitration" with respect to a minor after analyzing a delegation clause, *Doffing v. Meta Platforms*, 2022 WL 3357698 (D. Or. 2022) (cited in MTC Opp. 21), but there, the court declined to enforce a *forum selection* clause against a minor plaintiff *after he disaffirmed the contract*—a defense that is delegated to the arbitrator here. *Id.* at *6.

MTC Opp. 20-21. Nowhere do the Terms state they "do not apply" to minors. They say, quite differently, that "[t]o use the Services, you represent that you are at least eighteen (18) years old and of legal age to form a binding contract." Terms § 2.1. The sole case Plaintiffs cite, *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054 (7th Cir. 2018), is distinguishable because it concerned whether a minor following her mother's direction to use her credit card met the agreement's definition of an "Authorized User" given her age. *Id.* at 1062. That is irrelevant to the question here, which is whether a minor forms a valid contract by accessing an online service for their own benefit by falsely representing their age. *See S.T.G. by & through Garcia v. Epic Games, Inc.*, 2024 WL 4375782, at *2 (S.D. Cal. 2024) (compelling minor plaintiffs to arbitrate even though terms stated that "you must be an adult" to use the service).

**B. The Minor Users' Alleged Disaffirmance Is Delegated to the Arbitrator**

Plaintiffs next argue that, even if there was a valid agreement, they disaffirmed it and therefore cannot be compelled to arbitrate. But disaffirmation is a defense to *enforcement* of the contract—not its *formation*—and is therefore delegated to the arbitrator. *See* MTC 11-13. Plaintiffs address none of Defendants' cited cases on this point, nor do they cite any cases reaching a different conclusion. MTC Opp. 22-23.

Plaintiffs argue that the alleged disaffirmance of a contract "is not [an issue] of 'enforceability,'" MTC Opp. 22, but they cite no authority for that point—nor can they, because it is not true. *See* MTC 12-13; *see also K.F.C. v. Snap*, 29 F.4th 835, 837 (7th Cir. 2022) ("[T]he age of the contracting parties [is only] a potential defense to enforcement."); *Courtwright v. Epic Games, Inc.*, No. 2:24-cv-04055-BCW (W.D. Mo. Feb. 13, 2025) (delegating minor's disaffirmance defense to arbitrator). Plaintiffs instead cite a case concerning an *Alzheimer patient's*—not a minor's—capacity to form a contract, *Spahr v. Secco*, 330 F.3d 1266, 1273 (10th

Cir. 2003). Otherwise, they merely cite a *dissent* in a case where the majority held that the "infancy defense is for an arbitrator." MTC Opp. 23 (citing *In re StockX*., 19 F.4th at 886 (dissenting opinion)).

**C. The Minor Users Are Precluded from Disaffirming the Terms**

Even if this Court could resolve the Minor Users' disaffirmance defense, they are precluded from disaffirming under estoppel principles because they cannot return the benefit they received from using Temu's services. MTC 13-14; *Solovsky*, 135 F. Supp. 3d at 210 ("If a minor cannot return the benefits obtained … she 'is effectively precluded from disaffirming the contract … .'"); *Scott Eden Mgmt. v. Kavovit*, 563 N.Y.S.2d 1001, 1002 (N.Y. Sup. Ct. 1990) (same). Plaintiffs cite no law to the contrary, and their efforts to avoid this rule fail.

First, Plaintiffs argue that "estoppel does not apply" because the Minor Users "do not base their claims on the Terms." MTC Opp. 23-24. Contrary to Plaintiffs' suggestion, the estoppel principle does not turn on whether a plaintiff brings contractual causes of action. Rather, as Plaintiffs' own case says, it turns on whether the minor "knowingly exploits the agreement." *Comer v. Micor, Inc*., 436 F.3d 1098, 1101 (9th Cir. 2006). The Minor Users knowingly exploited Temu's Terms when they deliberately sought out and benefitted from Temu's services. *See Ligeri v. Amazon.com Inc.*, 2024 WL 3638241, at *8 (D. Conn. 2024) (explaining that a "nonsignatory can be said to have exploited a contract if he 'obtained a direct benefit' as a result of the contract").

Second, Plaintiffs argue that equitable estoppel "do[es] not apply where … plaintiffs disaffirm the entire agreement." MTC Opp. 24. But the cases Plaintiffs cite simply stand for the proposition that a minor cannot disaffirm only parts of a contract; rather, "disaffirmance … rescinds the entire contract." *Id.* (citing *T.K. v. Adobe Sys. Inc.*, 2018 WL 1812200, at *5 (S.D. Cal. 2024)). It is of no consequence whether the Minor Users purport to disaffirm all or parts of the Terms because they still retained benefits from Temu. *See Yeh v. Tesla, Inc.*, 2023 WL

6795414, at *9 (N.D. Cal. 2023) ("[T]he infancy defense may not be used inequitably to retain the benefits of a contract while reneging on the obligations attached to that benefit.").

Third, Plaintiffs argue that the Minor Users did not benefit from the Terms because their lawsuit claims they were harmed by using Temu. MTC Opp. 25. Of course, every plaintiff thinks they were harmed; that is inherent in a lawsuit. But that does negate that Plaintiffs received a benefit from accessing Temu, despite any complaints they may have about aspects of the services. *See Ligeri*, 2024 WL 3638241, at *8 ("[P]laintiffs obtained a benefit: access, in their capacity as sellers, to Amazon's buyer base. That they are unhappy with the quality of this access … makes no difference to whether they were bound to arbitrate a dispute about their unhappiness.").[15]

Fourth, Plaintiffs contend that even if the Minor Users retained a benefit, they are not barred from disaffirming, but instead may offset the value of the benefits from their damages. *See* MTC Opp. 25. The sole authority Plaintiffs cite is a footnote in a case from 1976, where the court deemed it "not necessary to examine the merits" of the argument "in detail." *CBS, Inc. (CBS Recs. Div.) v. Tucker*, 412 F. Supp. 1222, 1226 n.6 (S.D.N.Y. 1976). Their position is inconsistent with current New York Law, as the benefit obtained here is the access to the platform itself, which cannot be returned, whether by deducting from damages or otherwise. *See Solovsky*, 135 F. Supp. 3d at 210 (precluding minor from disaffirming where she could not return the benefit she obtained).

Last, Plaintiffs state that California "[p]ublic policy … favors Plaintiff's right to disaffirm the Arbitration Agreement." MTC Opp. 26 (citing *Palma v. Hat World, Inc.*, 2024 WL 660242, at *5 (C.D. Cal. 2024)). Putting aside that the law of New York, not California, applies here, *see*

---

[15] Plaintiffs cite *Credit One Bank*, 885 F.3d (cited in MTC Opp. 25), but in that case the minor did not "benefit" from the credit card agreement where she simply "pick[ed] up smoothies" her mother ordered. *Id.* at 1064. By contrast, the Minor Users allege they used Temu themselves, for their own purposes, and thus directly benefited from its services. MTC Opp. 25 (stating that minors "shop[ped] and … *paid* for the goods"); *cf. Yeh.*, 2023 WL 6795414, at *8 (describing *Credit One Bank* as "merely hold[ing] that the doctrine does not apply when there is *no* benefit to the child associated with the agreement").

Terms § 18.3, Plaintiffs mischaracterize *Palma*, which was limited to the policy interest in "allowing minors to disaffirm *employment-related* arbitration agreements." *Palma*, 2024 WL 660242, at *5 (emphasis added). The court said nothing about consumer agreements.

**D. The Minor Users Are Bound Even If They Used Somone Else's Account**

To the extent any Minor Users used Temu through someone else's account (*e.g.*, by using the app on their parent's phone), they are likewise bound by the Terms.[16] MTC 14-16. Plaintiffs have no cogent response to the cases Defendants cited. They only attempt to distinguish one of them, *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254 (E.D.N.Y. 2019), *aff'd*, 815 F. App'x 612 (2d Cir. 2020), on the basis that it involved a husband's use of a wife's account, and did not involve a minor. MTC Opp. 26. However, the *Nicosia* decision was not based on the husband's status, but was instead based on the idea that "the validity of these contract terms [cannot] wax[] and wane[] depending on the identity of the human users behind the screen." 384 F. Supp. 3d at 272. Plaintiffs offer no reason why this commonsense principle should not apply when the person behind the screen is a minor. *See, e.g.*, *Chan v. Charter Commc'ns Holding Co.*, 2015 WL 12655701, at *5 (C.D. Cal. 2015) ("[A]n arbitration clause often applies to the spouse and children of the signatory").[17]

The one case on which Plaintiffs rely, *B.F. v. Amazon.com Inc*, 858 F. App'x 218, 220 (9th Cir. 2021), applied Washington law, and if anything underscores why the Minor Users are bound

---

[16] Plaintiffs state that "Defendants do not identify which, if any, named Plaintiff would fall in this category." MTC Opp. 26 n.25. It is unclear why that matters. It is also a strange critique, given that Defendants asked for account identifiers for the Minor Users so that Defendants could determine who created their own account or used someone else's, and Plaintiffs' counsel refused to provide that information. *See* Trinh Decl. ¶¶ 46-64.

[17] Plaintiffs respond that "minors cannot be bound by contracts signed by third parties." MTC Opp. 26. That misses the point. If Minor Users accessed Temu through someone else's account, they are bound to the Terms through that action—not because a third party assented to the Terms on their behalf. Plaintiffs' reliance on *Difrancesco v. Win-Sum Ski Corporation* is misplaced; in that case, a parent executed a release on behalf of their child, and moreover, the court found the minor *was bound* by the release. 2017 WL 1046741, at *7, 9 (W.D.N.Y. 2017).

by the Terms on the facts here. In *B.F.*, the court found that minors were not bound by the arbitration agreement for claims relating to their parents' Amazon Alexa service because the minors had no reason to know they were using someone else's account when they spoke to Alexa and hence did not "knowingly exploit" the contract with Amazon." *Id.* at 221. By contrast, here, any Minor Users who did not themselves create an account would have had to knowingly access someone else's account to shop on Temu; therefore, they are bound by the same Terms as the user whose account they borrowed. *See In re SSL Int'l, PLC*, 843 N.Y.S.2d 264, 265 (1st Dep't, 2007) (holding that "non-signatories to the license agreement[] were estopped from seeking to avoid an arbitration provision … since they derived direct benefits from said agreement"). Indeed, the district court in *B.F.* itself distinguished its holding from *Nicosia* for that reason. *See B.F. by & through Fields v. Amazon*, 2019 WL 9364164, at *11 (W.D. Wash. 2019) ("Unlike the plaintiffs in *Nicosia* … Plaintiffs did not need to 'implicitly represent' that they were another person to gain access to the Alexa-enabled devices."); *see also Atencio v. Bird Rides Inc*., 2023 WL 8168955, at *2-3 (C.D. Cal. 2023) ("Plaintiff's reliance on *B.F.* … is misplaced" because the non-signatory plaintiff in *Atencio* "knowingly exploited the agreement" by using someone else's account to rent a scooter).[18]

## III. PDD HOLDINGS CAN ENFORCE THE ARBITRATION AGREEMENT

Plaintiffs' arguments that PDD Holdings cannot enforce the arbitration agreement all fail. As an initial matter, any dispute over this issue relates to the scope and enforceability of the arbitration agreement, and as such is delegated to the arbitrator. *See Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 211 (2d Cir. 2005) (considering nonsignatory's ability to enforce the arbitration

[18] Finally, Plaintiffs argue "[t]here are no third-party beneficiaries intended under the[] Terms." *See* MTC Opp. 27. The point is unclear. Defendants never asserted that Plaintiffs are third-party beneficiaries, nor does that affect the relevant analyses discussed above.

agreement an issue of arbitrability delegated to the arbitrator); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 849 (6th Cir. 2020) (same). But even if the Court were to decide the issue, Plaintiffs' arguments fail on the merits. A non-signatory like PDD Holdings may enforce an arbitration agreement against a signatory where (i) the issues to be arbitrated "are intertwined with the agreement" the estopped party signed, and (ii) there is a close relationship between the parties and controversies involved. MTC 17-18; *Desarrolladora La Ribera v. Anderson*, 2024 WL 5186600, at *14 (S.D.N.Y. 2024). Both elements are easily satisfied here.

As to the first element, "[t]he 'intertwinedness' prong … presents 'effectively the same question' as whether the claims against the non-signatory 'fall within the scope' of the underlying arbitration clauses." *Id.* Here, Plaintiffs' claims against PDD Holdings—identical to those against Temu—plainly fall within the subject-matter scope of the arbitration provision and are therefore "intertwined" with the Terms. While Plaintiffs contend that the claims against PDD Holdings must be "contract-based causes of action" that are based on "the contract providing for arbitration," MTC Opp. 30, that is not the test. For example, in *Ragone v. Atl. Video at Manhattan Center*, the court allowed the non-signatory parent company to enforce the arbitration agreement for plaintiff's Title VII claims relating to harassment—*i.e.*, not contract-based claims—because the arbitration agreement covered claims "arising out of the employee's employment or its termination." 2008 WL 4058480 at *8 (S.D.N.Y. 2008), *aff'd*, 595 F.3d 115 (2d Cir. 2010); *see also Desarrolladora*, 2024 WL 5186600, at *19 (applying estoppel to defamation claims). The test is simply whether the claims fall within the subject-matter scope of the arbitration agreement—which makes sense, as it would be unfair for a plaintiff to avoid an arbitration agreement intended to cover their use of a company's services merely by naming an affiliated entity as defendant, on the theory that the two entities are interchangeable.

As to the second element—the "close relationship" between the parties—Plaintiffs expressly allege that PDD Holdings and Temu are "alter egos," "agents," and "constituted a single enterprise with a unity of interest." SAC ¶¶ 34-39; MTC 17-18. That easily meets the standard for a sufficiently close relationship. *See Bimota SPA v. Rousseau*, 628 F. Supp. 2d 500, 505 (S.D.N.Y. 2009) (compelling arbitration with non-signatory where plaintiff had "affirmatively allege[d] that" the defendant "is the alter ego of" and "controlled by" the signatory).[19] Plaintiffs misread the law in asserting that "it is the relationship between Plaintiffs and the non-signatory (PDD Holdings) that matters." MTC Opp. 29 n.28. Rather, "courts look primarily at 'the relationship between the non-signatory … and the signatory in whose shoes the non-signatory seeks to stand'"—here, Temu. *Desarrolladora*, 2024 WL 5186600, at *14; *see also Ostrolenk*, 2020 WL 30350, at *6 ("This doctrine is most commonly invoked … where 'the non-signatory party asserting estoppel has had some sort of corporate relationship to a signatory party,' *including where 'a non-signatory defendant owns or controls a signatory defendant.*'") (emphasis added).

None of Plaintiffs' other arguments hold any water. They make a series of arguments related to third party beneficiaries, MTC Opp. 28-29, but PDD Holdings does not rely on third-party beneficiary status, and the fact that PDD Holdings is not a signatory to the Terms is hardly a distinguishing factor—it is the very premise of the estoppel doctrine. Plaintiffs also assert that estoppel cannot apply because PDD Holdings was a "third-party wrongdoer." MTC Opp. 29-30 (citing *Doe v. Trump Corp.*, 6 F.4th 400, 414 (2d Cir. 2021)). It is unclear what the *Doe* court

---

[19] *Reid v. Tandym Grp., LLC*, 697 F. Supp. 3d 62, 81 (S.D.N.Y. 2023) ("Estoppel is particularly appropriate where plaintiff's claimed injuries resulted from the 'concerted actions' of both the signatory and the non-signatory."); *Ostrolenk Faber LLP v. Lagassey*, 2020 WL 30350, at *6 (S.D.N.Y. 2020) ("Plaintiff even describes the corporate entities as 'mere alter-egos of [Defendant],'" which "essentially serve[s] as admissions … that Defendant has the requisite relationship."); *Carroll v. Leboeuf, Lamb, Greene & MacCrae, LLP.*, 374 F.Supp. 2d 375, 378 (S.D.N.Y. 2005) (because plaintiffs alleged that signatory defendant "acted at all relevant times [as] the agent" of non-signatory defendants, plaintiffs were estopped from avoiding arbitration with them).

meant by that language, but it cannot mean (as Plaintiffs suggest) that a non-signatory defendant cannot invoke estoppel if it is accused of doing wrong—as *every* defendant is alleged to be some kind of "wrongdoer."[20] Regardless, Plaintiffs are *not* claiming that PDD Holdings is a "*third-party* wrongdoer," but instead, they are claiming that PDD Holdings is functionally the same entity—the alter ego—of the signatory, Temu. *See infra* at 18-19. That is why estoppel applies here.[21]

## IV. PLAINTIFFS ARE NOT ENTITLED TO DISCOVERY

Finally, Plaintiffs claim that discovery is warranted so that they can review company records and "test" Defendants' factual assertions. MTC Opp. 31. However, there is no factual dispute, and in order to decide the motion the Court simply needs to review the Registration Prompt and arbitration agreement itself. This Court agreed when it first considered Plaintiffs' request. *See* Turner Decl., Ex. 1 (Pre-Motion Conf. Tr.) at 10:4-8 ("The agreement itself is clear on its face. … Why would there need to be discovery?"). There is no need to "test" Defendants' assertions, as Plaintiffs themselves submitted affirmations confirming they are Temu Users, *see* Evans Decl., Ex. L, and therefore proceeded through the Registration Prompt.

## <u>CONCLUSION</u>

For the reasons stated herein, the Court should compel arbitration of the Users' claims—against both Temu and PDD Holdings—without any delay from unnecessary discovery.

---

[20] Plaintiffs also cite *Doe* for the proposition that estoppel is inapplicable if the plaintiff is "unaware of any corporate relationship between [the] signatory [defendant] and the non-signatory defendants." MTC Opp. 29. But this factor was only relevant in *Doe* because the non-signatory there had fraudulently concealed the relevant relationship. *See Doe*, 6 F.4th at 414.

[21] Even if PDD Holdings was not entitled to enforce the arbitration agreement, the Court lacks personal jurisdiction over PDD Holdings because it has insufficient contacts with New York, as further described in Defendants' concurrently filed reply brief in further support of its Motion to Dismiss.

Dated: February 18, 2025

Respectfully submitted,

*/s/ Serrin Turner*

Serrin Turner
Matthew Valenti
Hadrian Luo
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: serrin.turner@lw.com
matthew.valenti@lw.com
hadrian.luo@lw.com

*Attorneys for Defendants Whaleco Inc. d/b/a Temu and PDD Holdings Inc.*

# APPENDIX A

| Plaintiffs' Opposition Brief | *Hu* Order |
|---|---|
| "[C]onsumers find that the arbitration clause is inconsistent with these rules and riddled with internal inconsistencies." MTC Opp. 5. | "Amici's argument that the inconsistency of the Terms prevents users from unambiguously manifesting assent fails … . At that time, [users] had the ability to review the Terms and, if they disagreed with or found such Terms to be 'convoluted and internally inconsistent,' (Amicus Br. 16), they had the opportunity to stop before creating a Temu account." *Hu* Order 37. |
| Plaintiffs argue there is no mutual assent "where users would not be aware that by signing up for Temu, an app that allows them to make future purchases, they entered into a contractual relationship … ." MTC Opp. 13. | "The Court finds that Plaintiffs unambiguously manifested assent to the Terms." *Hu* Order 34. |
| "Defendants also failed to provide the 'clear and conspicuous' notice of the Terms required to enter into a binding online agreement" because the "hyperlink" is not "adjacent" to the "button manifesting assent," "is in the smallest font on the page," and "not distinguishable from the surrounding text." MTC Opp. 13-14. | "The Court finds unpersuasive Plaintiffs' and Amici's arguments that Defendant did not provide Plaintiffs with reasonably conspicuous notice because the hyperlink was not in large font, capitalized, underlined, or in a color that sharply contrasted with the Registration Screen's background given that 'there are infinite ways to design a website or smartphone application' and 'there are no particular features that must be present to satisfy the reasonably conspicuous standard.'" *Hu* Order 28-29. |
| "[T]he page contains unrelated statements promoting Temu as providing 'free shipping' and 'free returns.'" MTC Opp. 14. | "Amici's argument that the Registration Screen is cluttered … is not persuasive. … The Second Circuit has not held that an 'uncluttered" interface must be free of 'promotions' or 'extraneous information.'" *Hu* Order 27. |
| "Arbitration is independently barred by the doctrine of collateral estoppel." MTC Opp. 16. | "[A]pplying [collateral estoppel] to bar Defendant from attempting to enforce the Terms and compel arbitration would be unfair because at least one other court has granted Defendant's motion to compel based on the Terms at issue in this action." *Hu* Order 17. |
| "[T]he delegation clause does not even apply to this dispute, which involves the theft of Plaintiffs' data." MTC Opp. 17. | "Courts have consistently found that similarly broad delegation clauses provide clear and unmistakable evidence of the parties' intent to delegate." *Hu* Order 41. |