**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

JEHAN ZIBOUKH, MARGRET PHILIE, VERA FIGLOCK, NICOLE MAY, TYANA DAUGHTERY, SOLALIZ HERNANDEZ, DEBRA KRYSTYN, I.E., A MINOR, CYNTHIA RODRIGUEZ, J.P., A MINOR, MIGUEL ACOSTA, VINSON MANGOS, NOAH KUPPER, J.P. A MINOR, CHRISTIAN VEGA, A.H. A MINOR, AND OLAYA BOURAKKADI AMRANI, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

WHALECO INC. D/B/A TEMU, AND PDD HOLDINGS INC. F/K/A PINDUODUO INC.,

Defendants.

Case No. 1:24-cv-3733-MKB-RML

Judge Margo K. Brodie

Magistrate Judge Robert M. Levy

CLASS ACTION

**PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

Plaintiffs make this Supplemental Submission to provide the Court with additional authority and newly-disclosed facts that bear on Defendants' motion to compel arbitration (*Ziboukh* ECF No. 75). Specifically, since Defendants' motion was briefed, a group of plaintiffs who elected not to contest the arbitrability of claims against Temu have filed a petition with the Court describing how, at the same time Defendants sought to compel arbitration in this case and *Hu v Whaleco Inc.*, No. 1:23-cv-06962-MKB (EDNY filed 7/5/2024) ("*Hu*"), Defendants argued before a "process arbitrator" that certain aspects of the claims could not be arbitrated and must be decided by a court. In doing so, Defendants took a position before the arbitrator that is at odds with the position they took here and in *Hu*. Moreover, in doing so, Defendants prevailed before the arbitrator, who ruled that the issues must be decided by a court and could not be arbitrated—consistent with the position the *Ziboukh* plaintiffs take here.

As a result, plaintiffs who did not oppose arbitration have not yet been able to initiate an arbitration on the merits after more than a year of attempting to do so. This newly-disclosed record further supports the *Ziboukh* Plaintiffs' Opposition to Defendants' motion to compel arbitration, demonstrating that the arbitration provisions Defendants drafted are unconscionable, unworkable, and so vague and inconsistent that there could be no mutual agreement to arbitrate.

## BACKGROUND

On March 21, 2025, a group of plaintiffs led by Aalany McMahan (the "*McMahan* plaintiffs") filed a Petition with the Eastern District of New York seeking to overturn a ruling by a "process arbitrator" that certain disputes relating to Defendants' collection of Temu user data could not be arbitrated and must be resolved by the courts. (Petition, *McMahan v. Whaleco, Inc.*, No. 1:25-cv-01590 (E.D.N.Y. Mar. 21, 2025), *McMahan* ECF No. 1, with accompanying exhibits ECF 1-1 to 1-10, attached as Exhibit A ("Arb. Petition").) Defendants recently filed a letter with this Court requesting that the *McMahan* petition be designated as "related" to the *Hu*

and *Ziboukh* litigation. 4/5/25 Letter, *Ziboukh* ECF No. 87.

In *McMahan*, the process arbitrator adopted the position urged by Defendants, who "refused to allow the arbitration to proceed" because a "precondition to arbitration" was not met. (Arb. Petition at 2, ¶ 6.) In so arguing, Defendants took a position contrary to the position they took before this Court in *Hu* and *Ziboukh*, arguing that the unconscionability of the informal dispute resolution provisions in the arbitration clause must be resolved by the courts—not an arbitrator. The Petition maintains that by taking inconsistent positions before the arbitrator and this Court, Defendants are implementing a "scheme to prevent consumers from bringing their claims in any forum" (*id.* at 4) and are acting in "bad faith" (*id.* at 6, ¶ 37).

The *McMahan* plaintiffs' Petition states that on January 22, 2024, they began submitting formal notices of dispute for the arbitration. (*Id.* at 5, ¶ 34.) However, Defendants refused to arbitrate until a "precondition to arbitration"—an individual informal dispute resolution conference—was completed. (*Id.* at 2, ¶ 6.) While the *McMahan* plaintiffs maintained that the provisions requiring informal dispute resolution were "unconscionable" and were "designed to delay proceedings and chill consumers from bringing their meritorious claims," they nonetheless went forward with the initial dispute resolution conferences in February 2024. (*Id.* ¶¶ 8-9.)

However, the Petition states that Defendants engaged in "bad faith conduct, before, during, and after the February 2024 conferences." (*Id.* ¶ 10.) "Temu admitted that it had no intention to engage in the settlement conferences in good faith. Instead, Temu used the conferences to attempt to 'gather information' about consumers and their claims." (*Id.* ¶ 11.) In addition, Temu "used the conference as an opportunity to threaten consumers with sanctions if they continued to pursue their arbitration claims against Temu." (*Id.* at 3, ¶ 12.)

Indeed, Defendants' representative at the conference did not even have settlement

authority. (*Id.* at 6, ¶ 37.) Rather, Defendants had a "customer service representative" named Michael attend the conferences and simply read from the same pre-prepared script "containing four boilerplate questions and a threat of sanctions should the consumer file any claims against Temu." (*Id.*) Defendants' representative "refuse[d] to have any 'discussion' at all" with claimants and "was not willing to answer any of the claimants' questions." (*Id.*)

Accordingly, the *McMahan* plaintiffs sought to have an arbitrator decide whether the conference provisions were unconscionable and, if not, whether they were satisfied. (*Id.* at 3, ¶ 13.) In response, Defendants argued that the issues were "for a court—and not an arbitrator," which the Petition notes was the "opposite" of the position Defendants had taken in the *Hu* case before this Court. (*Id.* at 4, ¶¶ 23-24.)

The AAA assigned the issues to a "process arbitrator" who ruled in favor of Defendants' position that "a court must first decide the issues involving the conference requirement" before arbitration could be initiated before a "merits arbitrator." (*Id.* at 3, ¶ 15.) In other words, Defendants successfully took "the opposite position" that they took before this Court, obtaining a ruling that such issues must be litigated, rather than arbitrated. (*Id.* at 4, ¶ 24.) As a result, after more than a year, the *McMahan* plaintiffs have been "unable to pursue their claims in arbitration." (*Id.* at 3, ¶ 16.)

## ARGUMENT

### I. The Record in the *McMahan* Petition Further Demonstrates that Defendants' Motion to Compel Arbitration in *Ziboukh* Should Be Denied.

The record laid out in the *McMahan* Petition further illustrates why Defendants' motion to compel arbitration in this case should be denied.

**Arbitrability.** Defendants' position before the process arbitrator and the arbitrator's ruling further demonstrate that issues regarding unconscionability should be decided by this

Court. In *McMahan*, the claimants argued both that they had satisfied the requirement for an initial dispute resolution conference and that the initial dispute resolution provisions were unconscionable. In response, Defendants maintained that the "AAA should decline to accept this case, unless and until the dispute over this preliminary issue is *resolved in court*, as the applicable *arbitration agreement requires*." (4/12/24 Serrin Turner, Letter to AAA, *McMahan* ECF No. 1-5, Ex. 8 to Arb. Petition (emphasis added).) The process arbitrator agreed, ruling that "*a court*, which does have jurisdiction over the issue of whether the condition precedent has been met, *may consider Claimants' argument that they did not comply with the provision because it is unconscionable*." (9/9/24 Process Arbitrator's Order at 5, *McMahan* ECF No. 1-5, Ex. 15 to Arb. Petition, Ex. A (emphasis added).) Accordingly, Defendants' position before the arbitrator was the same as that taken by the *Ziboukh* plaintiffs here—that issues regarding unconscionability of the arbitration provisions should be resolved by the Court.

**Unconscionability.** The process arbitrator's ruling and the record in the *McMahan* arbitration also demonstrate that the arbitration provisions are, in fact, unconscionable. While arbitration is designed to be a speedy and efficient means of dispute resolution, the record here is far from that. As the Petition describes, more than a year has passed, and the *McMahan* plaintiffs have been unable to initiate a single arbitration on the merits. Accordingly, Defendants' representation to the Court in this case that the initial dispute resolution provisions do not "'bottleneck' claims" (Def. Reply, *Ziboukh* ECF No. 81, at 13)[1] is contrary to this record.

Moreover, Defendants' conduct under the dispute resolution provisions illustrates the

[1] The Arb. Petition filed on the *McMahan v Whaleco* docket at ECF No.1, together with its exhibits, comprises 376 pdf pages and is attached to this brief as Exhibit A. References in this brief to Arb. Petition page numbers refer to the complete pdf page numbers between 1 and 376. References to page numbers in other documents filed in this case or in *Hu* refer to the page numbers contained in the ECF header for that document.

provisions' one-sided nature. Defendants' representative at the initial dispute resolution conference had no settlement authority and would not even engage in any discussion or exchange of information with plaintiffs. Rather, Defendants treated the provisions as merely another barrier to prevent plaintiffs from obtaining relief, an opportunity for one-sided "fact gathering" from plaintiffs, and a chance to "threaten consumers with sanctions if they continued to pursue their arbitration claims against Temu." (Arb. Petition ¶ 12, Ex. A.) Provisions like Temu's initial dispute resolution provisions are purposefully designed to "prevent consumers from bringing their claims." (*Id.* at 4.) *See also Fox v. Vision Serv. Plan*, 2017 WL 735735, at *7 (E.D. Cal. Feb. 24, 2017) (asymmetric disclosure requirements are unconscionable).

In addition, the fact that plaintiffs who did not challenge arbitration have been required to also litigate their claims refutes Defendants' assertion that the costs of arbitration do not "materially exceed those of a litigation." (Def. Reply, *Ziboukh* ECF No. 81, at 18.) The *McMahan* plaintiffs have been forced—as a result of Defendants' inconsistent litigation positions—to litigate their claims in both arbitral and judicial forums. Moreover, they will be forced to arbitrate their claims before two different arbitrators—a "process arbitrator" who ruled that the courts must decide certain issues in the arbitration and a "merits arbitrator" whom they have not even reached yet, despite spending a year litigating their claims. In the interim, plaintiffs may be forced to litigate an appeal to the Second Circuit, resulting in years-long delays before they can obtain any hearing on the merits.[2]

[2] Defendants' suggestion that the alternative to these piecemeal procedures is individual litigation of claims in the courts is inaccurate. (*See* Def. Reply, *Ziboukh* ECF No. 81, at 18 & fn.12.) Plaintiffs never agreed to give up their right to pursue class litigation absent a viable alternative dispute resolution mechanism. Rather, the class waiver provisions are inextricably intertwined with (and contained in) the arbitration provisions, which specifically state that they are the "provisions governing how disputes between you and Temu will be resolved." (Ex. A to Pl. Opp. to Mot. Compel Arbitration, *Ziboukh* ECF No. 78-2, § 20.) As demonstrated in Plaintiffs' Opposition, all of these provisions are void. Nonetheless, attempting to rewrite the arbitration provisions to require individual litigation in court would not only be inconsistent with the parties' agreement, but would be unconscionable on its face. *See, e.g., Heckman v.*

**Mutual Assent.** The record laid out in the *McMahan* Petition also demonstrates that there was no mutual assent to the arbitration provisions. Defendants and the *McMahan* plaintiffs have been unable to agree on the meaning of the arbitration provisions, much less who should decide questions relating to them, and Defendants have "refused to allow the arbitration to proceed." (Arb. Petition at 2, ¶ 6, Ex. A.) Indeed, the parties in *McMahan* have not even been able to agree on how disputes over the arbitration provisions should be resolved. The *McMahan* plaintiffs argued that their dispute should go directly to a "merits arbitrator"; Defendants argued that a "process arbitrator" should decide who should resolve the dispute and that the process arbitrator should send the dispute to a court for resolution. Defendants' view prevailed and, as a result, the *McMahan* plaintiffs have not even been able to start an arbitration on the merits. In sum, this record further demonstrates the lack of a "'clear, explicit and unequivocal agreement,'" which is a requirement to compel arbitration. *Meeg v. Heights Casino*, 2020 WL 1493658, at *3 (E.D.N.Y. Mar. 27, 2020); *see also Starke v. SquareTrade, Inc.*, 913 F.3d 279, 293 (2d Cir. 2019) ("a contract requires a 'meeting of the minds'").

## II. The Recently-Disclosed Facts Demonstrate that Any Alleged Agreement To Arbitrate Is Void *Ab Initio.*

The newly-disclosed facts contained in the *McMahan* Petition also demonstrate that any alleged arbitration agreement is void. As the Petition observes, Defendants have not acted in "good faith" in the arbitration proceedings (Arb. Petition at 2, ¶ 11 and 6, ¶ 37, Ex. A), effectively defeating arbitration as a means to resolve consumers' claims. Defendants' conduct shows that they never intended to resolve any claims through arbitration and, instead, seek to impose as many barriers as possible to the resolution of consumers' claims in any forum. Thus,

*Live Nation Entertainment, Inc.*, 120 F.4th 670, 688-89 (9th Cir. 2024) (unconscionable provisions in arbitration clause cannot be severed).

for example, Defendants never disclosed to consumers that the initial dispute resolution conference would be handled by a customer service representative who lacked settlement authority, that the representative would not even engage in any discussion but rather simply read from a script, that the conference would be merely a one-sided "fact gathering" opportunity for Defendants, that it would take claimants more than a year (or potentially years) before they could arbitrate the merits of any dispute, or that Defendants would make "scripted threats" of sanctions against every single consumer who brought a claim, regardless of the underlying individual facts of their claim (and indeed before obtaining the facts). (*See id.* at 6, ¶ 37.)

This record demonstrates that any alleged agreement to arbitrate was fraudulently induced. Not only did Defendants fail to disclose these facts, but they are contrary to representations Defendants made regarding the arbitration procedures when plaintiffs began using the Temu platform. The arbitration provisions in the Terms of Use state that "Temu is *committed to working with you* to reach a reasonable resolution." (Terms of Use, Ex. A to Pl. Opp. to Mot. Compel Arbitration, *Ziboukh* ECF No. 78-2, § 20.2 (emphasis added).) They state that "You and Temu agree that good faith informal efforts to resolve Disputes can result in a prompt, low cost and mutually beneficial outcome." (*Id.*) And, they state that "You and Temu therefore agree that before either party commences arbitration against the other (or initiates an action in small claims court if a party so elects), we will personally meet and confer telephonically or via videoconference, in a *good faith effort to resolve informally any Dispute covered by this Arbitration Agreement* …." (*Id.* (emphasis added).)

However, the record shows that all of these representations were false, and Defendants never intended to honor them. Rather, they were designed to induce claimants to give up their rights to litigate in court and agree to arbitration using the false promise of "prompt, low-cost"

and "good faith" resolution of disputes through arbitration that would be "mutually beneficial." As established in the Petition, Defendants did *not* engage in "good faith" efforts to resolve disputes. Defendants did *not* meet their "commit[ment]" to "work with" consumers for a "reasonable resolution"—indeed, they refused to engage in any discussions. And, as a result of Defendants' conduct, arbitration has *not* led to a "prompt, low cost and mutually beneficial outcome."

To the contrary, the Petition alleges that Defendants erected barriers to resolution of the claims and engaged in "bad faith" conduct, drawing out the proceedings and taking inconsistent positions, and imposing additional costs on consumers who have been forced to both arbitrate and litigate their claims. (Arb. Petition at 2, ¶ 10, Ex. A.) This is vividly illustrated by the fact that Defendants sent a "customer service" representative to the dispute resolution conferences who would not respond to any of claimants' questions, who had no settlement authority, and who merely repeated four boilerplate questions and a "scripted threat" of sanctions. As the Petition observes, "Temu admitted that it had no intention to engage in the settlement conferences in good faith." (*Id.* at 2, ¶ 11.)

It is also illustrated by the fact that Defendants continue to argue before the Court in this case that the arbitrator must decide issues regarding unconscionability while simultaneously taking a different position before a process arbitrator.[3] While Defendants successfully argued in

[3] Defendants argued that the unconscionability of the initial dispute resolution provision could be litigated before a court in *McMahan* because it fell within an "exception" to the arbitrator's authority that stated that "all Disputes about whether either party has satisfied any condition precedent to arbitration shall be decided only by a court of competent jurisdiction and not by an arbitrator." (Terms of Use, Ex. A to Pl. Opp. to Mot. Compel Arbitration, *Ziboukh* ECF No. 78-2, § 20.4.) But if Defendants' interpretation were correct, whether the delegation clause or the arbitration clause are unconscionable would likewise be committed to the courts under this provision because these too are "conditions precedent" to arbitration. In any event, the fact of the matter—as described in the briefing—is that the Terms do not commit resolution of issues regarding "unconscionability" to the arbitrator and so there is no need to resort to any purported "exceptions." But to the extent an "exception" applies, it applies equally to all issues of "unconscionability" including those raised in the *Ziboukh* Plaintiffs' opposition to Defendants' motion to

*McMahan* that the enforceability of certain provisions of the arbitration clause "*can only be resolved in court*,"[4] in *Hu*, Defendants argued that "*disputes about the enforceability of any part of the [arbitration] agreement are delegated exclusively to the arbitrator*" and "*any challenges to the arbitration agreement's specific provisions as* vague, *unconscionable*, or unenforceable—*like those the Ziboukh Plaintiffs attempt to raise—must instead be made in arbitration*." (Def. Resp. to *Ziboukh* Amicus (Aug. 19, 2024), *Hu* ECF No. 50, at 7 and 14.) This included, in particular, the *Ziboukh* plaintiffs' contention that the informal dispute resolution provisions were unconscionable. Accordingly, Defendants specifically maintained that arguments "challeng[ing] various provisions—*relating to informal dispute resolution ... as 'unconscionable' . . . are plainly delegated to the arbitrator*." (*Id.* at 17 (emphasis added); *see also id.* (asserting that "The Ziboukh Plaintiffs' Arguments That Certain Provisions Are Unconscionable Are Delegated to the Arbitrator.").)

Indeed, even after Defendants obtained a ruling from the process arbitrator holding that a court must decide unconscionability, they continued to argue before this Court that "all" issues raised by the *Ziboukh* plaintiffs in opposition to Defendants' motion to compel arbitration—including issues regarding the unconscionability of the informal dispute resolution provisions—are "for the arbitrator to decide." (2/18/25 Def. Reply, *Ziboukh* ECF No. 81, at 8.)

In sum, this record shows that Defendants never had any intention to arbitrate in "good faith," '"work with" consumers "to achieve a reasonable resolution," or provide consumers a "prompt, low cost, and mutually beneficial outcome." Rather, these representations were false when made. As a consequence, any alleged agreement to arbitrate is void. *See, e.g., Doctor's*

---

compel arbitration.

[4] Def. letter to Process Arbitrator (Aug. 23, 2024), Arb. Petition at 311; *see also*, *id*. at 315, 317.

*Assocs., Inc. v. Distajo*, 66 F.3d 438, 457 (2d Cir. 1995) ("'[I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it'"; if an "arbitration clause was induced by fraud," then the defrauded party is not bound by it and "there can be no arbitration.").

## III. Discovery Would Provide Further Grounds for Denial of Defendants' Motion.

Finally, the record in *McMahan* further supports the *Ziboukh* plaintiffs' request for discovery. The newly-disclosed facts, such as the arbitrator's ruling and Defendants' refusal to engage in good faith arbitration of the dispute, are relevant to Defendants' motion to compel arbitration in this case and further refute Defendants' contention that "there is no factual dispute" warranting discovery. (Def. Reply, *Ziboukh* ECF No. 81, at 27.) Accordingly, the *Ziboukh* plaintiffs request that the Court order Defendants to produce relevant materials from arbitrations under the Temu arbitration clause as well as any other materials that bear on whether the parties entered into a valid agreement to arbitrate.

## CONCLUSION

For the foregoing reasons and those stated in the prior briefing, Defendants' motion to compel arbitration should be denied.

Dated: May 15, 2025

Respectfully submitted by,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

*<u>/s/ Jeannie Evans</u>*

Jeannie Evans (Bar No. 6296339)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4962
Facsimile: (708) 628-4952
jeannie@hbsslaw.com

Steve W. Berman (Bar No. 3126833)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Nathaniel A. Tarnor, #4742797
HAGENS BERMAN SOBOL SHAPIRO LLP
68 3rd Street, Suite 249
Brooklyn, NY 11231
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
nathant@hbsslaw.com

**ALPHEUS LLC**

Douglas G. Smith (Bar No. 6238127)
77 West Wacker Drive, Suite 4500
Chicago, IL 60601
Telephone: (312) 451-6708
dsmith@alpheusllc.com

*Attorneys for Plaintiffs*