**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEHAN ZIBOUKH, MARGRET PHILIE, VERA FIGLOCK, NICOLE MAY, TYANA DAUGHTERY, SOLALIZ HERNANDEZ, DEBRA KRYSTYN, I.E., A MINOR, CYNTHIA RODRIGUEZ, J.P., A MINOR, MIGUEL ACOSTA, VINSON MANGOS, NOAH KUPPER, J.P., A MINOR CHRISTIAN VEGA, A.H., A MINOR, AND OLAYA BOURAKKADI AMRANI, on behalf of themselves and all others similarly situated, | Case No. 1:24-cv-03733-MKB-RML |
| Plaintiffs, | District Judge Margo K. Brodie |
| v. | Magistrate Judge Robert M. Levy |
| WHALECO INC. d/b/a TEMU, and PDD HOLDINGS INC., | |
| Defendants. | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

Date: May 23, 2025

Serrin Turner
Matthew Valenti
Hadrian Luo
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: serrin.turner@lw.com
matthew.valenti@lw.com
hadrian.luo@lw.com

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND ......................................................................................................2

A. Temu's IDR Requirement ..............................................................................2

B. The *McMahan* Petition Concerns a Dispute over Compliance with the IDR Requirement, Which, as the AAA Found, Must Be Litigated in Court ..................4

I. TEMU'S POSITIONS ON THE IDR REQUIREMENT ARE CONSISTENT .................5

II. PLAINTIFFS' ATTEMPTS TO CHALLENGE THE ARBITRATION AGREEMENT BASED ON THE ALLEGATIONS OF THE *MCMAHAN* PETITION ARE MERITLESS ..........................................................................7

A. The *McMahan* Allegations Do Not Imply the IDR Requirement Is Unconscionable ..............................................................................7

B. The *McMahan* Allegations Do Not Imply the Arbitration Agreement Lacks Mutual Assent ..............................................................................9

C. The *McMahan* Allegations Do Not Imply the *Ziboukh* Plaintiffs Were "Fraudulently Induced" into Agreeing to Arbitration ..........................................10

III. NO DISCOVERY IS WARRANTED ..........................................................................11

CONCLUSION ........................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) ....................8

*Daskalakis v. Forever 21, Inc.*,
2016 WL 4487747 (E.D.N.Y. Aug. 25, 2016)....................9

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....................8

*Gramercy Holdings I, LLC v. Matec S.R.L.*,
2023 WL 5917624 (S.D.N.Y. 2023)....................11

*Hu v. Whaleco, Inc.*,
No. 23-cv-06962 (E.D.N.Y.) ....................6, 7

*Ipcon Collections LLC v. Costco Wholesale Corp.*,
698 F.3d 58 (2d Cir.2012)....................10

*Kohler v. Whaleco, Inc.*,
757 F. Supp. 3d 1112 (S.D. Cal. 2024)....................7

*McMahan et al. v. Whaleco, Inc.*,
No. 1:25-cv-01590 (E.D.N.Y. Mar. 21, 2025)....................1

*SCPS, LLC et al. v. Kind Law et al.*,
Index No. 152508/2025 (N.Y. Sup. Ct.) ....................3

*Torres v. Major Auto. Grp.*,
2014 WL 4802985 (E.D.N.Y. Sept. 25, 2014) ....................10

*V'Soske v. Barwick*,
404 F.2d 495 (2d Cir. 1968)....................9

*White v. Four Seasons Hotels & Resorts*,
999 F. Supp. 2d 250 (D.D.C. 2013)....................8

## OTHER AUTHORITIES

*Mass Arbitration Shakedown: Coercing Unjustified Settlements*, U.S. Chamber of
Commerce (Feb. 2023) ....................3

## PRELIMINARY STATEMENT

Plaintiffs continue to generate needless briefing in response to Temu's straightforward motion to compel arbitration. The motion was fully briefed three months ago—*more* than fully, as Plaintiffs collectively filed scores of pages of briefing in this case and the *Hu* case where they appeared as "amicus." Plaintiffs now file a "supplemental opposition," claiming to have uncovered "additional authority and newly-disclosed facts" (Supp. Opp. at 1)—when in fact they merely repeat *allegations made in someone else's lawsuit*, concerning the informal dispute resolution ("IDR") requirement in Temu's Terms of Service (ECF No. 77-2, "Terms"). *See McMahan et al. v. Whaleco, Inc.*, No. 1:25-cv-01590 (E.D.N.Y. Mar. 21, 2025) ("*McMahan* Petition"). The Supplemental Opposition contains no new facts, sand certainly no new law, bearing on the resolution of Temu's motion to compel in *this* case. Like their effort to commandeer the *Hu* litigation, this is just another effort by the *Ziboukh* Plaintiffs to litigate the merits of someone else's case rather than focusing on their own.

Plaintiffs' principal argument is that Temu took "inconsistent" positions in this case versus in the arbitration proceedings leading to the *McMahan* Petition, as to whether a challenge to the enforceability of the IDR requirement must be resolved in arbitration or in court. It is unclear why this would matter to Plaintiffs even if it were true, but regardless, it is not: Temu has not taken inconsistent positions. Indeed, the arbitrator in *McMahan* specifically rejected that very contention in sending the *McMahan* Petitioners to court. As the arbitrator found, this case and the *McMahan* Petition involve fundamentally different circumstances. The *McMahan* Petition concerns a dispute over whether the Petitioners there complied (or have a valid defense for not complying) with the IDR requirement before they filed arbitration demands—a type of dispute specifically carved out of the delegation provision in the Terms. By contrast, the *Ziboukh* Plaintiffs have not filed any arbitration demands against Temu; they are challenging the IDR requirement as part of a broader

challenge to the enforceability of the arbitration agreement as a whole, which is an issue the Terms generally delegate to the arbitrator. Temu's positions in each case are consistent with one another, and they are both consistent with the Terms.

Plaintiffs' remaining arguments—that the "record" in the *McMahan* Petition "shows" that Temu did not participate in the IDR process in good faith with the *McMahan* Petitioners—have no relevance to Plaintiffs' own case and in any event, are based entirely on self-serving allegations made by other litigants, not any established "facts." The *Ziboukh* Plaintiffs have not even attempted to set up IDR conferences with Temu. They certainly have no basis to argue that Temu has made it unduly difficult for them to comply with the IDR requirement or used it to delay arbitration of their claims—which the *Ziboukh* Plaintiffs are resisting, not pursuing. As is evident from the face of the IDR requirement, it is easy for any individual to comply with: it merely requires getting on a call with a Temu customer representative. The *Ziboukh* Plaintiffs could conduct these calls in a single afternoon if they wished.

The *Ziboukh* Plaintiffs are the ones that are delaying arbitration of their claims, by opposing Temu's motion to compel and continuing to clog the docket with repetitive and unnecessary briefing like the Supplemental Opposition. The Court should reject the *Ziboukh* Plaintiffs' latest effort to distract from the merits of their own case and grant Temu's motion.

## BACKGROUND

### A. Temu's IDR Requirement

As set forth in prior briefing, Temu's arbitration agreement contains an IDR provision requiring a party seeking to arbitrate to first "personally meet and confer telephonically or via videoconference" with the other party, "in a good faith effort to resolve [the dispute] informally."

Terms § 19.1; *see also* Ex. 1.[1] This is "a condition precedent and requirement that must be fulfilled before commencing arbitration." *Id.*

The requirement provides an opportunity for both sides to hear one another's views and determine whether the dispute can be resolved informally before an arbitration demand is filed. And by requiring the claimant's personal participation, the requirement serves to ensure that there is a real dispute, with a real *disputant*, that needs to be resolved—which unfortunately cannot be taken for granted in the context of mass arbitration efforts like the one being pursued in *McMahan*.[2] Indeed, the law firm behind *McMahan*—Kind Law LLC—was recently sued for initiating a mass arbitration on behalf of hundreds of purported "clients" who had never even heard of Kind Law or who Kind Law was forced to admit it never actually represented.[3]

Because it would defeat the purpose of having a condition *precedent to arbitration* if parties were able to proceed to arbitration without complying with the condition, the Terms carve out disputes over compliance with the IDR requirement from the delegation clause. Terms § 19.7. Specifically, the Terms provide that "all Disputes about whether either party has satisfied any condition precedent to arbitration shall be decided only by a court of competent jurisdiction and not by an arbitrator." *Id.* Thus, if one party files an arbitration demand without first complying

---

[1] Unless specified otherwise, citations to Ex. refer to the Exhibits annexed to the *McMahan* Petition, filed in one composite document (*see McMahan*, No. 25-cv-01590, ECF Nos. 1-5).

[2] *See, e.g.*, *Mass Arbitration Shakedown: Coercing Unjustified Settlements*, U.S. Chamber of Commerce (Feb. 2023), at 18 ("[T]he firms filing mass arbitrations appear to lack the resources to manage these large numbers of claims. Rather, the goal appears to be to use the threat of a huge [arbitration] fee payment to force companies to settle the claims *en masse*, regardless of the underlying merits."), available at https://instituteforlegalreform.com/wp-content/uploads/2023/02/Mass-Arbitration-Shakedown-digital.pdf.

[3] *See SCPS, LLC et al. v. Kind Law et al.*, Index No. 152508/2025 (N.Y. Sup. Ct.), NYSCEF No. 2 at ¶¶ 1-6, 16-44 ("During [a] hearing, the Court asked [Kind Law] whether they represented the AAA claimants in that action. Defendants confirmed they did not. But they told the Court they were going to confirm who they actually represented. It took [Kind Law] three months just to identify who they represent.").

with the IDR requirement, the other party may dispute their right to proceed with arbitration—and that dispute must be resolved in court, not arbitration.

### B. The *McMahan* Petition Concerns a Dispute over Compliance with the IDR Requirement, Which, as the AAA Found, Must Be Litigated in Court

The background and procedural history of *McMahan* Petition will be set forth in detail in Temu's forthcoming motion to dismiss the Petition. Temu only provides a brief summary here, in order to provide critical context about the procedural circumstances of that dispute, which the *Ziboukh* Plaintiffs ignore.

On March 27, 2024, Kind Law filed 19,371 identical arbitration demands against Temu with the American Arbitration Association (the "AAA"). Kind Law did so notwithstanding that merely *five* of the nearly twenty thousand named claimants participated in IDR conferences before the arbitration demands were filed. After those five conferences, Kind Law abruptly "canceled" all remaining conferences, arguing (baselessly) that Temu was not participating in the conferences in good faith. *See* Ex. 5.

After Temu objected to arbitration going forward without the claimants satisfying the IDR requirement first, the AAA recognized that there was a dispute between the parties concerning a condition precedent to arbitration, and it appointed a "Process Arbitrator" to determine whether the AAA had jurisdiction over that dispute.[4] *McMahan* Petition at 6. Temu argued before the Process Arbitrator that the dispute must be litigated in court, as it was fundamentally about whether Petitioners had satisfied a precondition to arbitration, which is a type of dispute specifically carved out from Temu's delegation clause. *Id.*; *see also* Ex. 15. To the extent Petitioners sought to argue that the IDR precondition was unenforceable, they were doing so in the context of that dispute, as

---

[4] Rule MA-6 (Ex. 9.3 at 6) (explaining that a "Process Arbitrator" has authority to determine "[d]isputes over any applicable conditions precedent" as well as "the power to rule on their own jurisdiction").

a putative defense for their non-compliance—and thus that argument belonged in court along with the rest of the dispute. *See* Ex. 12.

The Process Arbitrator agreed with Temu and issued an order requiring Petitioners to litigate their dispute about the IDR compliance requirement in court. Ex. 15 at § V. ("Temu's arbitration agreement is … unequivocal in delegating that authority [to decide whether the IDR condition precedent has been met] to a court."). In doing so, the Process Arbitrator expressly rejected an argument made by the *McMahan* Petitioners that Temu had taken a contradictory position in the *Hu* case then pending before this Court (in which the *Ziboukh* Plaintiffs participated as amicus). As the Process Arbitrator explained:

> In *Hu v. Whaleco* (23-cv-06962), a putative class action, the plaintiffs are resisting arbitration on Temu's motion to compel. Here, the Individual Claimants want to proceed with arbitration, but argue that they should not have to comply with the precondition of the IDR conferences. Although enforceability may be in contention in both cases, the issues are distinguishable.

*See id*.

**ARGUMENT**

**I. TEMU'S POSITIONS ON THE IDR REQUIREMENT ARE CONSISTENT**

The *Ziboukh* Plaintiffs argue that Temu's position in *McMahan*—that the dispute over the *McMahan* Petitioners' non-compliance with the IDR provision belongs in court—conflicts with Temu's position in this case—that the *Ziboukh* Plaintiffs' challenge to the enforceability of the arbitration provision (including the IDR provision) belongs in arbitration. Supp. Opp. at 2-3, 8-9. The *Ziboukh* Plaintiffs are wrong; as the Process Arbitrator found, the positions are consistent.

The *Ziboukh* Plaintiffs misleadingly quote Temu as arguing in the *Hu* case that "any challenges to the arbitration agreement's specific provisions as vague, unconscionable, or unenforceable—like those the *Ziboukh* Plaintiffs attempt to raise—must … be made in arbitration." Supp. Opp. at 9. Plaintiffs omit the immediately preceding sentence in the quoted

brief, which noted, correctly, that the otherwise broad delegation provision in the Terms "is subject … to limited exceptions not applicable here." *Hu v. Whaleco*, Case No. 23-cv-06962 (E.D.N.Y. August 19, 2024), ECF No. 50 at 9. One of those exceptions—for disputes over compliance with the IDR requirement—is squarely at issue in *McMahan*, whereas it is not in *Ziboukh* (and was not in *Hu*).

The Process Arbitrator saw through this same argument when the *McMahan* Petitioners tried it in arbitration. Specifically, the *McMahan* Petitioners cited Temu's briefing in *Hu* and argued that Temu's position there conflicted with its position that the *McMahan* Petitioners' dispute over the IDR precondition belonged in court. *See* Ex. 14. The Process Arbitrator rejected the argument, finding that the issues in each case were distinguishable. As the Process Arbitrator explained, in *McMahan*, there is a dispute over whether the Petitioners there satisfied a condition precedent to arbitration, which the Terms expressly require to be resolved in court—even if Petitioners wish to raise enforceability of the IDR requirement as a defense in that dispute. *See* Ex. 15 at § V (explaining that a court may consider a challenge to the enforceability of the IDR provision in the context of adjudicating a dispute over compliance with the provision, because "[u]nconscionability … is a defense to a claim of non-compliance"). In contrast, the *Ziboukh* Plaintiffs have never sought to engage in arbitration—they are resisting it—nor have they ever sought to engage in the IDR process. Accordingly, there is no pending dispute over whether the *Ziboukh* Plaintiffs have commenced arbitration without complying with the IDR precondition, and thus their case does not fall within the carveout from the delegation provision for such disputes.

The *Ziboukh* Plaintiffs are instead seeking to challenge the enforceability of the arbitration agreement as a whole, which is an issue the Terms generally delegate to the arbitrator. There is therefore nothing inconsistent about Temu arguing that the *McMahan* dispute over IDR

compliance belongs in court while at the same time arguing that the *Ziboukh* Plaintiffs' dispute belongs in arbitration. As the Process Arbitrator stated: "Although enforceability may be in contention in both cases, the issues are distinguishable." *Id.*; *see also Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112, 1131 (S.D. Cal. 2024) (finding that the carve-out to Temu's delegation clause did not apply because "[n]either party is challenging the other's satisfaction of a condition precedent to arbitration").

## II. PLAINTIFFS' ATTEMPTS TO CHALLENGE THE ARBITRATION AGREEMENT BASED ON THE ALLEGATIONS OF THE *MCMAHAN* PETITION ARE MERITLESS

Plaintiffs spend much of their brief arguing that the *McMahan* Petition demonstrates that the arbitration agreement is unenforceable—claiming it "shows" the IDR requirement unfairly delays arbitration, is "one-sided" and "prohibitively expensive," and is implemented in "bad faith" by Temu. Supp. Opp. at 4-9. This is now the *third time* Plaintiffs have raised such arguments about the IDR requirement. *See* ECF No. 78 at 6; *Hu v. Whaleco*, No. 23-cv-06962 (E.D.N.Y. July 5, 2024), ECF No. 45 at 22. Nothing about the *McMahan* Petition makes these arguments any more persuasive—particularly given that the *McMahan* Petition consists of mere *allegations*, not "facts" capable of "showing" anything, and moreover, the Petition consists of allegations about Temu's interactions with *other litigants*, not the *Ziboukh* Plaintiffs.

### A. The *McMahan* Allegations Do Not Imply the IDR Requirement Is Unconscionable

Plaintiffs argue that the *McMahan* Petition shows that the IDR requirement is unconscionable because it delays resolution of claims, asserting, without any actual knowledge of the procedural history of *McMahan*, that the *McMahan* Petitioners have been waiting "more than a year … to pursue their claims in arbitration." Supp. Opp. at 3, 4, 5, 7, 9. The truth is that the delay in *McMahan* is self-imposed: Petitioners' counsel, Kind Law, chose to manufacture a dispute

over the IDR requirement rather than having its putative clients comply with the requirement; and even after the AAA rejected Kind Law's effort to circumvent the requirement and closed the matter in September 2024, Kind Law waited over *six months* to file its Petition in court. But regardless, what does any of this have to do with the *Ziboukh* Plaintiffs? There are only 12 of them who claim to be Temu users. The notion that they are being delayed from pursuing their claims as a result of the IDR requirement in the Terms is absurd: They could easily each get on the phone with Temu for ten minutes in order to satisfy the requirement—and if they were unable to reach a resolution of their claims with Temu on the calls, they could immediately file arbitration demands. This simple precondition does not impose any unreasonable barrier to arbitration and compares favorably to other IDR requirements that courts have upheld. *See e.g.*, *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1007-08, 1014 (9th Cir. 2023) (enforcing IDR provision requiring a user, before initiating arbitration, (a) to first contact customer support to try to resolve their dispute informally *and* (b) if unsuccessful, to submit a formal complaint to the company and wait for its response); *White v. Four Seasons Hotels & Resorts*, 999 F. Supp. 2d 250, 255, 260-61 (D.D.C. 2013) (enforcing IDR provision requiring that employee first have informal discussion with supervisor, then file written complaint internally, wait for human resources investigation, and appeal to general manager if not satisfied); *see also* ECF No. 82-1 at 27:19-24 (Court stating at pre-motion conference: "[I]t is a tried and true practice, that usually before you even move forward with litigation, you try to resolve it. I don't find … it to be problematic.").[5]

The *Ziboukh* Plaintiffs also parrot the *McMahan* Petitioners' arguments that—in the *five* IDR conferences that actually went forward—Temu allegedly used them for "one-sided 'fact

[5] For the same reason, complying with the IDR requirement can hardly be considered "prohibitively expensive," as Plaintiffs argue. Plaintiffs take issue with the *McMahan* Petitioners needing to resolve their

gathering.'" Supp. Opp. at 4-5. The *Ziboukh* Plaintiffs have no basis for these assertions other than the self-serving narrative in the Petition. *They* have never sought to participate in any IDR conferences with Temu, and thus they have no standing to argue that Temu failed to participate in such conferences in good faith. Moreover, if that ever happened to them, the Terms would provide them with a remedy: They could dispute Temu's good-faith compliance in court—if, for some reason, they wanted a court to order Temu to redo the conferences—or, more simply, they could just proceed to file an arbitration demand, which they would be free to do as long as *they* had participated in the IDR process in good faith.

The *Ziboukh* Plaintiffs' hypothetical grievances directed at the IDR provision provide no basis to find the provision unconscionable—either on its face or as applied to them.

### B. The *McMahan* Allegations Do Not Imply the Arbitration Agreement Lacks Mutual Assent

The *Ziboukh* Plaintiffs next argue that the "record laid out in the *McMahan* Petition" shows "there was no mutual assent to the arbitration provisions," because, they say, Temu and the *McMahan* Petitioners "have been unable to agree on the meaning of the arbitration provisions, much less who should decide questions relating to them." Supp. Opp at 6. The argument is risible. The fact that parties might differ over how to interpret a contract obviously does not mean there is no contract; otherwise, any party could disavow a contract simply by disputing the other party's reading of it. *See V'Soske v. Barwick*, 404 F.2d 495, 500 (2d Cir. 1968) ("[A]ll the terms

dispute in both arbitration and court. Supp. Opp. at 5. But that, too, resulted from their counsel's own choice to have them not comply with the IDR requirement. The IDR requirement itself does not impose any unreasonable costs on an individual claimant. And in any event, an agreement is not rendered unconscionable merely by virtue of requiring different types of disputes to be resolved in different forums—regardless of whether that may result in inefficiencies (which is not the case here). *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) (finding that courts may compel arbitration of only arbitrable claims "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums").

contemplated by the agreement need not be fixed with complete and perfect certainty for a contract to have legal efficacy.”), *quoted in, e.g.*, *Daskalakis v. Forever 21, Inc*., 2016 WL 4487747 (E.D.N.Y. Aug. 25, 2016) (upholding arbitration agreement despite alleged ambiguities over aspects of arbitration process).

Not even the *McMahan* Petitioners are making the argument that their disagreements with Temu imply no arbitration agreement was formed. *See McMahan* Petition at 3 (“There is no dispute that the parties entered into a binding arbitration agreement.”). The *Ziboukh* Plaintiffs have no standing to raise this argument vicariously for them.

### C. The *McMahan* Allegations Do Not Imply the *Ziboukh* Plaintiffs Were “Fraudulently Induced” into Agreeing to Arbitration

Finally, Plaintiffs recycle the above arguments to claim that the arbitration agreement was “fraudulently induced” and “void ab initio,” because Temu allegedly misrepresented that it would comply with the IDR requirement in “good faith.” Supp. Opp. at 6-7. Plaintiffs cite no case law for this argument, nor do they even cite the requisite elements for fraud—which is understandable, because the argument has no grounding in the law.

Fundamentally, the argument conflates alleged non-compliance with a contract provision with fraudulent inducement to enter the contract. The elements of fraudulent inducement are “(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by appellants; and (iv) resulting damages.” *Torres v. Major Auto. Grp*., 2014 WL 4802985, at *6 (E.D.N.Y. Sept. 25, 2014) (quoting *Ipcon Collections LLC v. Costco Wholesale Corp*., 698 F.3d 58, 62 (2d Cir.2012)). Plaintiffs do not point to any “misrepresentation of a presently existing or past fact.” Instead, they point to the *terms of the contract itself*—namely the provisions in which the parties agree to participate in good faith in the IDR process. Plaintiffs argue these provisions were “false” because the *McMahan* Petition

supposedly "shows" that Temu "ha[s] not acted in 'good faith'" in IDR conferences with those Petitioners. Supp. Opp. at 8. But even if the *McMahan* Petitioners' allegations of bad faith participation in the conferences were accurate, that would merely imply that Temu had not lived up to its contractual obligation with respect to those conferences—not that it had fraudulently induced anyone into entering the arbitration agreement. *Gramercy Holdings I, LLC v. Matec S.R.L.*, 2023 WL 5917624, at *20 (S.D.N.Y. 2023) ("[T]o avoid being duplicative of a claim for breach of contract, the misrepresentation must be a representation of present fact, not of future intent …. If, by contrast, a plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory.") (cleaned up).

Moreover, the *Ziboukh* Plaintiffs' argument is doubly misguided, because the alleged non-compliance with the IDR provision they are relying on does not even concern them—because *they* were not involved in the conferences. They have not even sought to set up IDR conferences for themselves. Instead, the *Ziboukh* Plaintiffs are pointing to allegations of non-compliance with the provision made by *other litigants in a different case*. It makes no sense for the *Ziboukh* Petitioners to claim that they were fraudulently induced into entering the Terms based on alleged conduct involving other people about which they have no personal knowledge.

## III. NO DISCOVERY IS WARRANTED

Finally, the *Ziboukh* Plaintiffs use the *McMahan* case as an opportunity to renew their tired request for discovery. Supp. Opp. at 10. The request continues to be meritless. The Court need only decide whether the *Ziboukh* Plaintiffs are required to arbitrate their claims, which it can do from the face of the Terms and a review of the consent flow Plaintiffs went through in agreeing to them. Plaintiffs continue to lack any coherent explanation for why they need discovery into any additional facts. In particular, they continue to lack any coherent explanation for why they need discovery relating to *other litigants* in *other proceedings*. Moreover, the entirety of the *McMahan*

parties' briefing in arbitration and the Process Arbitrator's order is publicly available on the record. No other materials were exchanged in the *McMahan* arbitration beyond what the *Ziboukh* Plaintiffs already have access to. In short, there is nothing for them to discover.

Plaintiffs' request for discovery merely reflects that they know they have no basis to resist arbitration on the facts before the Court, so they are hoping to launch a fishing expedition to keep their case going. The request should be rejected along with the rest of their meritless arguments.

## CONCLUSION

Defendants' motion to compel arbitration has been amply briefed. It should now be granted.

Dated: May 23, 2025

Respectfully submitted,

*/s/ Serrin Turner*

Serrin Turner
Matthew Valenti
Hadrian Luo
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: serrin.turner@lw.com
matthew.valenti@lw.com
hadrian.luo@lw.com

*Attorneys for Defendants Whaleco Inc. d/b/a Temu and PDD Holdings Inc.*